No. 22710.

Carlos Marquez v. The People of the State of Colorado.
(450 P.2d 849)

Decided February 17, 1969.

220

FOREST E. CLARK, JR., for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, JAMES F. PAMP, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE LEE.

PLAINTIFF in error, whom we shall refer to as "defendant," was found guilty of the crimes of unlawful possession of narcotic drugs and conspiracy to unlawfully possess narcotic drugs. Defendant was tried jointly with co-defendant Alfred Donald Castro. However, this writ of error is brought by Carlos Raymond Marquez only.

Defendant alleges the trial court erred in two particulars: First, it failed to suppress evidence unlawfully seized; and second, it improperly admitted into evidence exhibits designated as "J" and "K" claimed to be prejudicial to defendant.

Prior to the trial a motion to suppress evidence was filed alleging that the search which produced the drug, marijuana, was illegal since it was conducted without a search warrant, and without reasonable grounds for suspicion that a crime had been or was being committed. The Honorable George M. McNamara found that the case of *Alire v. People,* 157 Colo. 103, 402 P.2d 610, was controlling and the motion to suppress was denied.

The Honorable Richard L. Ott presided over the trial and a motion to suppress was again presented and again denied.

The facts out of which the case arose are as follows: Officers Peters and Parisi were patrolling in the vicin-

ity of West 32nd Avenue and Vallejo Street in Denver, Colorado. As they were driving south in the 3200 block on Vallejo Street, they observed the defendant and another man in an auto double parked on 32nd Avenue headed west. The officers honked at defendant to move his car. Defendant drove around the corner south on Vallejo Street to the curb where he parked, and the officers parked directly behind him.

Officer Peters alighted from the patrol car and walked toward defendant's car. Defendant, who had been driving, got out of his car and met Officer Peters at a point about midway between the two cars. Officer Parisi remained in the patrol car and co-defendant Castro likewise remained in the other car.

Peters requested defendant to produce his operator's license and he complied. Peters wrote a traffic ticket charging defendant Marquez with double parking. Defendant was then asked for the auto registration, which he could not produce, explaining that the auto belonged to his brother and that he had borrowed it. At this time Castro alighted from the car and came over to where Peters and defendant were conversing. Officer Parisi then came over to the group. When defendant Marquez was unable to produce the registration card, Peters then went to defendant's auto and looked inside at the steering post for the registration. It was not there. While looking in the car, Peters noticed a clear plastic bag partially concealed by a blanket on the front seat. The plastic bag contained a green plant-like substance which Peters suspected to be marijuana. Peters then went back to the group and advised Parisi to place the defendants in the patrol car, which was done. Peters returned to defendant's auto to get the plastic bag and to search the auto. He found three match boxes (exhibits "H," "I" and "J") and some wheat-straw cigarette papers (exhibit "K"). Defendants were confronted with the plastic bag and other items but denied knowing anything about them. Peters then contacted headquar-

ters to get an identification clearance on defendants and to obtain the assistance of the Detective Intelligence Bureau.

After some delay the detectives arrived and eventually defendants were taken to police headquarters where each was placed in a separate interrogation room, their pockets emptied and the contents (exhibits "A" through "G"), along with the three match boxes, cigarette papers and plastic bag, delivered to the police laboratory for analysis. Of the contents of defendant Marquez' pockets, exhibits "A" and "B" contained marijuana. Two of the match boxes, exhibits "H" and "I," contained marijuana, whereas exhibit "K" did not. The green plant-like substance contained in the plastic bag proved to be marijuana.

The entire transaction, from the time defendants were ordered by the officers to park until they were taken to police headquarters, was estimated to be from forty-five minutes to an hour and a half. The officers had no search warrant and no effort was made to obtain such.

■■ We agree with the trial court that this case is governed by the law as set forth in *Alire v. People,* 157 Colo. 103, 402 P.2d 610. In the instant case the officer detained defendant for an admitted traffic violation. While performing his duties in this regard the officer inquired for the auto registration which by statute must be either in the possession of the operator or in the vehicle.

"The registration card issued for a vehicle required to be registered hereunder shall at all times while the vehicle is being operated upon a highway within this state be in the possession of the operator or chauffeur thereof or carried in the vehicle and *subject to inspection by any peace officer.*" C.R.S. 1963, 13-3-11(5). (Emphasis added.)

Upon defendant's failure to produce the registration, the officer had the right to look in the vehicle for the registration to inspect it. It was at this time that he

224

observed the plastic bag containing what he suspected and which turned out to be marijuana. The officer had probable cause to believe a crime was being committed in his presence and had the right and duty to make an arrest. C.R.S. 1963, 39-2-20. The defendants were then placed under arrest. The officer immediately searched the auto as an incident to the lawful arrest.

■ We quote from *Alire v. People,* 157 Colo. 103, 402 P.2d 610, which we believe is quite apropos here: "It has repeatedly been held that police officers are not required to close their eyes to evidence lying in plain view; it is not considered a search to observe that which is open and patent [citing cases] * * *. Throughout these cases we find enunciated the pellucid principle that *the discovery of the fruits of a crime or of contraband, lying free in the open, does not constitute any kind of search.* It is also quite clear that the seizure of such fruits or contraband is not unreasonable. Therefore, since the constitutional prohibition is against unreasonable searches and seizures, when the seizure is not unreasonable no guaranteed rights have been violated. * * * " (Emphasis added.)

In *Alire, supra,* we quoted with approval the language contained in *Ellison v. United States,* 93 U.S. App. D.C. 1, 206 F.2d 476:

" 'If an officer sees the fruits of crime — or what he has good reason to believe to be fruits of crime — lying freely exposed on a suspect's property, he is not required to look the other way, or disregard the evidence his senses bring him. Law enforcement is difficult enough without requiring a police officer to free his mind of clues lying flatly before him.' "

The marijuana was contraband and not the product of the search, whereas the match boxes and cigarette papers were the product of the search.

■ Under the facts of this case it was not error to deny defendant's motion to suppress and to admit into evidence the bag of marijuana.

■ Defendant contends that he was somehow prejudiced by the admission into evidence of exhibits "J" and "K." Exhibits "H," "I" and "J" were match boxes found under the blanket in the front seat and exhibit "K" was the wheat-straw cigarette paper which was lying near the plastic bag partially concealed, all of which were recovered during Officer Peters' search. Exhibits "H" and "I" contained marijuana, whereas "J" contained only matches. "K," the cigarette paper, was described by Captain Shumate of the Denver Police Laboratory as the kind used more often than any other to roll marijuana cigarettes. Defendant argues that these items are not material elements in the crime charged in the information. True, without the contraband the charge could not be sustained on the basis of exhibits "J" and "K" alone. However, this does not render the items inadmissible. They are relevant, being descriptive of the scene of the crime. That they suggest defendant might have been a user of marijuana — a lesser offense than that with which he was charged — does not render such items inadmissible. *Allarid v. People,* 162 Colo. 537, 427 P.2d 696.

■ Defendant cites *Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, as prohibiting admissibility on the basis that, not being the fruits of the crime, they are not the subject of a valid seizure. However, the later case of *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, holds to the contrary:

"* * * The Fourth Amendment allows intrusions upon privacy under these circumstances, and there is no viable reason to distinguish intrusions to secure 'mere evidence' from intrusions to secure fruits, instrumentalities, or contraband."

We find no prejudicial error.

The judgment is affirmed.

Mr. Chief Justice McWilliams, Mr. Justice Groves and Mr. Justice Hodges concur.