## No. 25483

### The People of the State of Colorado v. Nancy Ann Stevens
(517 P.2d 1336)

Decided December 31, 1973.          Rehearing denied January 21, 1974.

400

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, David A. Sorenson, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Wallace Lundquist, Deputy, T. Michael Dutton, Deputy, Dorian E. Welch, Deputy, for defendant-appellant.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Nancy Ann Stevens, appeals from her conviction of possession of marijuana, C.R.S. 1963, 48-5-2, and violation of the contraband statute, 1967 Perm. Supp., C.R.S. 1963, 40-7-58(2). She will be referred to as defendant.

At approximately 12:45 p.m. on January 18, 1971, defendant, her infant child, and another woman parked their auto in the parking lot outside the Colorado State Penitentiary. They entered a public restroom located on the grounds of the park adjacent to the parking lot. Defendant's companion left the restroom, returned to their car, and then proceeded to the gate of the penitentiary, looking back in the direction of the restroom. Defendant and her child left the restroom, went to the car and then entered the penitentiary.

These activities aroused a watch tower guard's suspicion because it was a cold day and during cold weather visitors normally use the restroom inside the penitentiary rather than the restroom in the park. He immediately requested that the restroom be searched. Defendant was the last person to leave the restroom before the search party entered the restroom. The search uncovered six bags of suspected marijuana in the wastepaper basket. This search was conducted between 12:45 and 1:00 p.m. At approximately 1:00 p.m. each day, inmate crews maintain the park.

An investigator apprehended defendant and her companion in the lobby of the penitentiary and took them to the conference room. He advised them of their *Miranda* rights, and told them they were under arrest for possession of marijuana and bringing contraband onto penitentiary property. Defendant shortly thereafter absolved her companion from any part of illegal activities and admitted that she left the marijuana in the restroom as an inmate had instructed her to do.

Defendant was charged with the two counts, and she filed two motions: the first, to suppress her statements to the investigator on the grounds that they were involuntarily obtained, and the second, to dismiss the contraband violation on the grounds that it entailed an invalid delegation of power and was not applicable to her. The trial court denied both

motions.

At a trial to the court, defendant was found guilty on both counts. Defendant's motion for new trial was denied by the trial court.

On appeal, defendant contends the trial court erred (1) in admitting into evidence defendant's 'statements on the grounds that People failed to show probable cause for defendant's arrest, and (2) in denying defendant's motion to dismiss the contraband count. We do not find merit in defendant's contentions and, therefore, affirm the judgment of the trial court.

## I.

Defendant argues that both convictions should be set aside because she was arrested without probable cause. She contends that all subsequent statements were tainted with the unlawful arrest and should not have been admitted into evidence.

People argue that (A) defendant waived her right to raise this issue on appeal because of her failure to raise the illegality of the arrest until closing argument, and (B) even if the issue is properly before this court, the record establishes probable cause for her arrest. For the reasons discussed below, we choose to reach the merits of defendant's contention.

## A.

Defendant's pre-trial motion to suppress raised only the issue of voluntariness. At trial, when the statements were offered as evidence, defendant again objected to their admission. The trial court specifically asked for defendant to state the basis of the objection. Defense counsel again raised only the voluntariness issue. The objection was overruled and the confession was introduced into evidence. During closing argument, defendant raised for the first time the issue of taint from the allegedly unlawful arrest. She argued that the evidence produced at trial did not show probable cause for the arrest. The trial court stated that the objection should have been raised at the close of People's case so that there would have been an opportunity for more evidence to be

introduced on the legality of the arrest. Without conducting an evidentiary hearing, as it had on earlier motions to suppress, the court heard argument on the issue and ruled that there was probable cause for the arrest, and, therefore, the confessions were properly admitted into evidence.

The trial court has the discretionary power to entertain a suppression motion at trial. Crim. P. 41(e). If the trial court elects to rule on a suppression motion raised at trial, an appellate court should not consider the matter waived unless it can be shown that the trial court abused its discretion in ruling on the merits of the motion. In the instant case, the trial court chose to rule on the motion even though it was untimely. Nevertheless, since the court was the trier of the fact, a belated ruling on the admissibility of the confessions did not prejudice either defendant or People. Thus, we hold that it was within the trial court's discretion to rule on the motion; therefore, we do not consider the issue waived. As we have pointed out, no separate evidentiary hearing on the circumstances surrounding the arrest was held at the time of trial. However, it is not necessary to remand this case for an evidentiary hearing because of our disposition on the probable cause issue.

B.

To determine whether defendant's Fourth Amendment rights were violated, we first examine the apprehension of the defendant. The defendant and her companion were in the visitors' lobby of the penitentiary when a prison official requested them to accompany him to a conference room where he confronted them with the contraband, and asked them to explain their actions.

We have held that a temporary police detention in the nature of "field investigation" can be justified by less than probable cause for arrest. *People v. Marquez,* 183 Colo. 231, 516 P.2d 1134; *People v. Avalos,* 179 Colo. 88, 498 P.2d 1141; *People v. Gurule,* 175 Colo. 512, 488 P.2d 889; *Stone v. People,* 174 Colo. 504, 485 P.2d 495. *See* Comment, *An Analytical Model for Stop and Frisk Problems,* 43 Colo. L. Rev. 201 (1971). It is true that the "field investigation" in

the cited cases did not proceed to the extent present in this case. In *Stone,* we said:

"In order lawfully to detain an individual for questioning, (1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose."

We feel that actions of the officers here fall within the announced rules of *Stone,* and we hold that temporary detention for field investigation including some questioning is proper where the *Stone* tests are met.

■ Defendant argues that since the police characterized the detention in the conference room as an arrest, the People must show probable cause to arrest; whereas, if the apprehension was characterized as a stop, something less than probable. cause for arrest will suffice. *See People v. Baird,* 172 Colo. 112, 470 P.2d 20. Attaching such significance to these labels is misplaced. These labels are merely a shorthand way of describing different degrees of intrusions on Fourth Amendment rights of privacy and should not be confused with the underlying analysis in deciding whether the particular intrusion was justified under the circumstances. *See* LaFave, *"Street Encounters" and the Constitution: Terry, Sibron, Peters, and Beyond,* 67 Mich. L. Rev. 39, 51-52 (1968). *See also* Colo. Sess. Law 1972, ch. 44, § 39-3-103.

■ We have found no cases which hold that the Fourth Amendment requires an officer to inform a suspect that he is being detained under a "stop" rather than a conventional "arrest." In fact, the Fourth Amendment is invoked when a seizure occurs regardless of the means by which the officer chooses to execute it. *Stone v. People, supra.* Moreover, there seems to be no reason for the police to use different terminology in executing the respective detentions. In either case, the intrusion is the same. The suspect is deprived of his freedom to move. The psychological effect of the confrontation upon the suspect is examined, as was done here, in a voluntariness hearing. Therefore, we hold that labeling the

detention as an arrest does not, *per se,* require that the arresting official have had probable cause to "arrest" the defendant with all the consequences that an "arrest" entails. The proper inquiry is whether the seizure was reasonable which turns on "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio,* 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905. *See also Stone v. People, supra.* As pointed out by Justice Schaefer, it is "more relevant to ask whether there is probable cause for restraining a suspect than to ask whether there is probable cause for believing in the suspect's guilt."[1]

Under *Terry* and *Stone* analysis, we must first determine whether the prison official had reasonable grounds to approach defendant in the waiting lobby and take her to a conference room for questioning. The official knew that defendant and her companion had aroused a guard's suspicion, that a shakedown of the restroom uncovered suspected marijuana, and that the two suspects had been the last to leave the restroom prior to the search. However, the record does not indicate how many other persons used the restroom that morning or when the last shakedown occurred. Therefore, we hold that the record would not support the extent of an intrusion which would be justified by probable cause to arrest. But here defendant was not subjected to such an intrusion. She was not taken to the stationhouse, booked, and jailed to await trial until after she had confessed to the crime. Rather, the official followed an intermediate course of action by taking the suspect out of the public waiting lobby to make, as we have said, a "field investigation" which was certainly warranted under the circumstances here. As we have so often held, we deal in this area with probabilities which are not technical but are actual and practical questions of everyday life upon which reasonable and prudent men act. *People v. Baird,* 172 Colo. 112, 470 P.2d 20. In fact, had the

---

[1] W. Schaefer, *The Suspect and Society* 25 (1967)

officers not questioned the defendant here they would have been guilty of dereliction of duty. While we do not approve of taking a suspect any further than necessary to engage in this questioning, we believe the removal of this suspect from the prison lobby was a reasonable and sensible manner to investigate the criminal activity.

Secondly, we must determine whether the period of detention was reasonable under the circumstances. Shortly after 1:00 p.m., defendant was taken from the lobby to a conference room in the prison. She was then advised of her *Miranda* rights. The record indicates that sometime between her advisement and 1:30 p.m. she made a statement implicating herself and clearing her companion. On appeal, defendant does not allege that her statement was involuntary and we find nothing in the record which indicates that the period of detention was for an unreasonable period of time or for any other purpose than to question a primary suspect. Hence, we hold that intrusion was justified and reasonably conducted under the circumstances. Therefore, the trial court properly admitted defendant's statements.

## II.

Defendant also contends her conviction under the contraband statute, 1967 Perm. Supp., C.R.S. 1963, 40-7-58(2), was improper. She was convicted under the following provision of that statute:

"Any person who shall furnish or attempt to furnish to any person confined in the Colorado state penitentiary,. . . . any drug, narcotic, medicine, chemical compound, tool, alcoholic beverage, firearm, explosive, deadly weapon, instrument, or other item of personal property *which the person in charge of such place of confinement has previously declared by written regulation posted within such a place of confinement, or within a division of such place of confinement, to be harmful,. . .* shall be guilty of a felony. . . ." (Emphasis added.)

Defendant argues that the clause requiring a written regulation and posted notice, underscored above, modifies each of the enumerated contraband items. She maintains that since

408

the statutory requirements were not complied with, her conviction should fall. Furthermore, she argues that under her construction the statute unconstitutionally delegates the power to define a crime to the executive.

It is a cardinal rule of statutory construction that the legislative intent should be ascertained and given effect whenever possible. *People v. Sneed,* 183 Colo. 96, 514 P.2d 776; *People v. Lee,* 180 Colo. 377, 506 P.2d 136; *Cross v. People,* 122 Colo. 469, 223 P.2d 202; *People v. Morgan,* 79 Colo. 504, 246 P. 1024. The subject statute was obviously enacted to control contraband in penal institutions. As we read the statute, the legislature proscribed several enumerated items. In our view, it further provided that the warden could proscribe "other items of personal property" as the need arose. Thus, we hold that the clause, which requires a valid regulation to be posted, modifies only the phrase "other items of personal property." Therefore, the only remaining issue is whether marijuana is within one of the enumerated items specifically proscribed by the legislature.

The contraband statute specifically provides that any "narcotic" is a contraband item. We believe that the legislature clearly intended to prohibit marijuana in penal institutions by the use of that term. We are aware that medically speaking marijuana is not in the narcotic family. Colorado Legislative Council Research Publication No. 127, *Dangerous Drugs and Drug Abuse Control,* pp. 3-8, 33 (1967). Nevertheless, the legal definition of narcotic drugs in Colorado includes cannabis, C.R.S. 1963, 48-5-1(14)(a), and, of course, cannabis is commonly known as marijuana. *People v. Stark,* 157 Colo. 59, 400 P.2d 923. We believe this is sufficient notice that an attempt to furnish an inmate with marijuana is a violation of the contraband statute. *People v. Young,* 139 Colo. 357, 339 P.d 672.

Accordingly, the judgment of the trial court is affirmed.

MR. JUSTICE GROVES and MR. JUSTICE LEE specially concur.

MR. JUSTICE ERICKSON dissents.

MR. JUSTICE LEE specially concurring:

I concur in the result. I disagree, however, with the reasons as set forth in the majority opinion.

In my view, when the investigator took the defendant to the conference room, locked the door, advised her of her rights, and told her she was under arrest — as the investigator testified he did — the defendant was effectively placed under arrest. This was more than a temporary detention for questioning.

The critical determination then is whether there was probable cause to justify the arrest. I agree with the trial court's determination that there was probable cause for the arrest.

Correctional Officer Daniel A. Willyard testified he was posted at Tower 1 near the front gate with a clear view of the restroom. It was visitation day, and he was watching the restroom and parking lot carefully. His suspicion was aroused when he noticed first defendant's companion, and then defendant and her daughter, leave the restroom, proceed to their car and then walk to the front gate. Defendant's companion was looking back in a manner which appeared suspicious. Officer Willyard thought that she was looking for inmates who had not yet come out to the gang site.

It was a cold day, and ordinarily visitors wishing to use restroom facilities would have proceeded directly into the prison reception room. Officer Willyard therefore ordered a shakedown of the restroom. The search produced what appeared to be baggies of marijuana.

This was a penitentiary setting where, as is commonly known, the risk of smuggled contraband reaching inmates is ever present. Posted prison regulations prohibited such activity. Officer Willyard's duty was to keep an eye on visitors in the parking and restroom areas. In view of these circumstances, and the officer's observation of defendant and her companion, it was not unreasonable for him to suspect that an offense had been or was about to be committed. A check of the restroom verified his suspicion. In *Gallegos v.*

*People,* 157 Colo. 173, 401 P.2d 613, this Court said: " 'Probable cause' was defined as early as 1897 in *Stacey v. Emery,* 97 U.S. 642, 645, 24 L.Ed. 1035, as a reasonable ground of suspicion, supported by circumstances sufficiently strong to warrant a cautious man to believe that an offense has been or is being committed by the person arrested. See also, *Gonzales v. People, supra.* Vague suspicion does not rise to the dignity of probable cause. * * *"
All the foregoing circumstances gave rise to more than a "vague suspicion."

It is fundamental that it is not necessary that the facts and circumstances necessary to support a finding of probable cause be sufficient to establish guilt beyond a reasonable doubt. Here, I believe, as did the trial judge, that the facts and circumstances were sufficient to warrant a cautious prison official to believe the defendant had committed an offense which would justify her arrest.

I am authorized to say that MR. JUSTICE GROVES joins in this specially concurring opinion.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent.

In my view, the majority opinion ignores the well-established law of arrest and the procedures which have been designed to guarantee that a confession is genuinely voluntary and not the product of a will overborne.

A vast body of precedent exists which defines the rights of a citizen, as well as the duties of police officers, in enforcing the law. Lasson, *The History and Development of the Fourth Amendment* (1957); Landynski, *Search and Seizure and the Supreme Court* (1966); Ringel, *Searches and Seizures, Arrests and Confessions* (1972).

Relying primarily upon *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), as implemented in Colorado under *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971), the majority holds that an individual may be physically detained in police custody in those instances where the police harbor a reasonable suspicion that criminal activity *may* be

involved, even in the absence of probable cause. Such a conclusion is contrary to every decision of the United States Supreme Court which has examined the scope of Fourth Amendment protection, including *Terry v. Ohio, supra. Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Morales v. New York,* 396 U.S. 102, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969); *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Sibron v. New York* and *Peters v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Trupiano v. United States,* 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Sabbath v. United States,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 881 (1964); *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Haynes v. Washington,* 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *Lynumn v. Illinois,* 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); *Chapman v. United States,* 365 U.S.

610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); *Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); *Go-Bart Importing Co. v. United States,* 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Amos v. United States,* 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

Under the reasoning of the majority opinion, constitutional rights may be ignored under the guise of what is loosely referred to as a "field investigation." Although I concurred in *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971), with the hope that the right to interrogate for a limited purpose, which we created in that decision, would not be abused, but later I was forced to suggest that we went too far when we established the *Stone* area. *People v. Gurule,* 175 Colo. 512, 488 P.2d 889 (1971).[1]

---

[1] The standard for arrest and detention laid down in the majority opinion grants to the police much greater discretionary power than has yet been recommended by any major research group which has examined the subject. *See ALI Model Code of Pre-Arraignment Procedure,* § 110.2(1)(a) (Official Draft No. 1, 1972) and *Uniform Arrest Act,* § 2(1); and *See generally,* Warner, *The Uniform Arrest Act,* 28 Va. L. Rev. 315 (1942); *Arizona Appellate Decisions; Proper Grounds for Investigatory Stops: A Test,* 15 Ariz. L. Rev. 708 (1973). Moreover, the standard enunciated in this decision goes beyond what the Colorado legislature has stated to be the minimum standard for arrest and detention. *See* C.R.S. 1963, 39-2-20. The legislature has not overlooked the difficult situations which police confront on occasion.

The disposition of this case hinges not only on Federal, but also on Colorado constitutional provisions relating to arrest. U.S. Const. amend. IV; Colo. Const., art. II, § 25. Serious questions involving the constitutional right of the assistance of counsel and to protection against compelled self-incrimination are also involved, but have not been addressed because of the state of the record which is before us. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); *Lynumn v. Illinois, supra.*

When the facts revealed by the record are closely examined, the applicability of binding precedent of the Supreme Court of the United States becomes obvious. The facts, in my mind, establish that the defendant was unlawfully arrested, and that the product of that arrest was an involuntary confession.[2]

## I.
### Facts

A mother and her infant child went to visit the child's father at the Colorado State Penitentiary and were accompanied by a neighbor. Before entering the penitentiary, they used the women's public restroom in the park adjacent to the

---

In fact, they have provided specific statutorily sanctioned procedures for detention and interrogation in the absence of probable cause. C.R.S. 1963, 39-2-3. *See also,* C.R.S. 1963, 39-3-103, Laws 1972, p. 198.

The majority, by validating the police officers' conduct in this case and their failure to comply with C.R.S. 1963, 39-2-3, have ignored the clear intent of the legislature and, in effect, have judicially amended C.R.S. 1963, 39-2-20 in such a way as to drastically lower the minimum standard for arrest and detention.

[2] *See* LaFave and Remington, *Controlling the Police: The Judge's Role in Making and Reviewing Law Enforcement Decisions,* 63 Mich. L. Rev. 987 (1963); Note, *Police Practices and the Threatened Destruction of Evidence,* 84 Harv. L. Rev. 1465 (1971); Cook, *Probable Cause to Arrest,* 24 Vand. L. Rev. 317 (1971); *Evolution of the Police Officer's Right to Arrest Without a Warrant in Colorado,* 43 Den. L. J. 366 (1966).

prison. The neighbor went in first and after she came out, the mother and child went in. The neighbor made a backward glance toward the restroom and that single act aroused the suspicion of a penitentiary guard. The guard ordered that a search be made of the restroom and marijuana was found in a waste basket. There is nothing in the record that establishes how many other people used the restroom before the trio entered and the search was conducted. At the time of the shakedown search, the defendant, her infant son, and the neighbor were inside of the penitentiary waiting to see the child's father.

After the marijuana was found, a sheriff's officer assigned to the penitentiary placed both women under arrest. Thereafter, they were taken upstairs to an interrogation room and locked inside. They were read an advisement of rights form and interrogation commenced. The marijuana which was found in the restroom was brought in, and both the defendant and her neighbor were asked what they knew about it. Both women denied any knowledge of the marijuana. After additional interrogation, the defendant said that her neighbor was innocent and knew nothing about the marijuana. The neighbor was then allowed to leave the room. The defendant requested leniency and ultimately confessed to the crimes charged.

It is not disputed that the confession which the defendant sought to suppress at the trial is the key to the prosecution's case. No evidence is contained in the record which would establish probable cause to arrest not to mention proof beyond a reasonable doubt which is required to convict, apart from the confession.

## II.
### Probable Cause for the Arrest

The statutory authority which allows Colorado law enforcement officers to make felony arrests without a warrant is restricted to offenses which are committed "in their presence," or "where a criminal offense has in fact been committed, and he [the police officer] has reasonable ground to believe that the person to be arrested has committed it."

C.R.S. 1963, 39-2-20. On a number of occasions, this court has equated "reasonable grounds to believe" with probable cause. *Marquez v. People,* 168 Colo. 219, 450 P.2d 349 (1969); *Johnson v. Enlow,* 132 Colo. 101, 286 P.2d 630 (1955). The Colorado statute reflects the standard imposed upon all states by the Fourth Amendment to the United States Constitution which commands that no warrants for an arrest or a search shall issue except "upon probable cause supported by oath or affirmation . . . particularly describing the place to be searched, and the persons or things to be seized." *Accord,* Colo. Const., art. II, § 25. It is axiomatic that when an impartial judge cannot issue an arrest warrant without the requisite probable cause, a policeman in the course of a "field investigation" may not exercise greater power and arrest without first having reasonable grounds to believe that the suspect has committed a specific crime. *Wong Sun v. United States, supra; People v. Moreno,* 176 Colo. 488, 491 P.2d 575 (1971).

History discloses that at the time the Fourth Amendment became a part of the Constitution, American courts were already striving to define probable cause. Early decisions held that common rumor or report, suspicion, or even "strong reason to suspect" would not suffice to satisfy the burden of establishing probable cause. *Conner v. Commonwealth,* 3 Binn. (Pa.) 38 (1810). Probable cause, as a limitation on the right to make an arrest is now firmly entrenched in American criminal justice and is a pillar of our right to privacy and freedom from unlawful restraints. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1972); *Lankford v. Geltson,* 364 F.2d 197 (4th Cir. 1966); Dellinger, *Of Rights and Remedies: The Constitution As a Sword,* 85 Harv. L. Rev. 1532 (1972). If I am to give any meaning to the history behind our constitutional safeguards, I cannot condone an arrest on mere suspicion and still recognize the existence of the Fourth Amendment. The amount of evidence required to establish probable cause does not rise to the level of evidence required to establish guilt. *Brinegar v. United States, supra;*

*Draper v. United States, supra.* However, good faith on the part of the arresting officer will not suffice or serve as a substitute for probable cause. *Henry v. United States, supra.* Probable cause exists if the facts and circumstances known to the officer warrant a reasonable, prudent man in believing that the offense has been committed and that the suspect is responsible. *Stacey v. Emery,* 97 U.S. 642, 24 L.Ed. 1035 (1878).

Under the facts presented in this case, the only knowledge which the prison official possessed at the time the defendant was detained was that (1) the defendant entered, and a short time later left, a ladies' restroom in a public park near the penitentiary, and (2) marijuana was later found in the restroom. The majority opinion concedes that the police did not have probable cause when the defendant was arrested or detained and taken into the interrogation room. Not only do the facts fail to establish probable cause, but I doubt that a reasonable, prudent man (or a police officer) would consider that the defendant's acts were even suspicious.

As I view the Fourth Amendment, the defendant was arrested at the very moment that she was deprived of her liberty and movement and taken into another room by the prison official. *Henry v. United States, supra.* Evidence which is subsequently discovered or incriminating statements which are subsequently made cannot relate back and justify an arrest which is unlawful when made. *Johnson v. United States, supra; Henry v. United States, supra; Wong Sun v. United States, supra; People v. Moreno, supra.*

For the reasons I have stated, the defendant's arrest was not, in my opinion, supported by probable cause and requires that the defendant's confession be suppressed. *People v. Moreno, supra; Collins v. Beto,* 348 F.2d 823 (5th Cir. 1965); *Wong Sun v. United States, supra; Henry v. United States, supra.*

### III.
### The Stop and Frisk Exception

One of the most basic constitutional rules is that "searches conducted outside the judicial process, without prior

approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment." *Coolidge v. New Hampshire, supra.* This fundamental rule is subject to only a few specifically-established and well-delineated exceptions. These exceptions are "jealously and carefully drawn," and there must be "a showing by those who seek exemption" that the exigent circumstances forced the police to act without a warrant. The burden rests upon those seeking the exemption to show the need for it.

*Coolidge v. New Hampshire, supra, Terry v. Ohio, supra,* and its companion cases, *Sibron v. New York, supra,* and *Peters v. New York, supra,* were the first decisions in which the constitutional difficulties of police "stop and frisk" investigatory practices, conducted without the existence of probable cause, were examined. *See Morales v. New York, supra.* The trilogy of cases held that under certain stringently and specifically limited circumstances, persons suspected of criminal activity may be stopped, frisked for weapons and momentarily interrogated by police officers, even though there is less than probable cause to arrest. *See Stone v. People, supra.*

"*Terry* ... was intended to free a police officer from the rigidity of a rule that would prevent his doing anything to a [person] reasonably suspected of being about to commit or just having committed *a crime of violence,* no matter how grave the problem or impelling the need for swift action, unless the officer had what a court would later determine to be probable cause for arrest. *It was meant for the serious cases of imminent danger or of harm recently perpetrated to persons, not the conventional ones of possessory offenses.*" *Terry v. Ohio, supra.* [Emphasis added.]

The *Terry* decision did not hold that whenever a police officer has a hunch or suspicion that a person is engaging in any type of criminal activity, he may stop, detain, and interrogate the suspect. Rather, it held that if police officers chose to stop and frisk or interrogate a citizen, they must have specific facts from which it can reasonably be inferred that the suspect is, has been, or is very soon to be engaged in

the commission of a crime *and* is armed and dangerous. *See Adams v. Williams, supra.* The opinion in *Terry* recognized that on-the-street law enforcement encounters may require an officer to act at times on the basis of strong evidence, short of probable cause, which indicates that criminal activity has taken place and that the criminal suspect is armed and dangerous. The court's opinion was unequivocally clear, however, that the outcome of the decision was not intended to be a retreat from the prior pronouncements of the court that the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure. In recognizing the realities of difficult situations which policemen on occasion face, the Supreme Court fashioned a rule which struck an equitable balance between the rights of the individual and the physical safety of our law enforcement personnel.

The majority's reasoning in this case ignores the indisputable fact that the Supreme Court of the United States, in *Terry v. Ohio, supra,* begrudgingly accepted the necessity for creating an exception to the warrant requirements of the Fourth Amendment to the United States Constitution, and treats this case as if warrantless intrusions into an individual's constitutionally protected security were the rule, rather than the "narrowly drawn" exception. The majority decision abandons the carefully struck balance embodied in *Terry* between a citizen's right to be secure from police intrusions and the government's responsibility for effective law enforcement.

Accordingly, I would order that the defendant's confession be suppressed and her conviction reversed.