OPINION
Jeffrey Charles pleaded no contest to possession of cocaine. He was found guilty and sentenced accordingly by the Montgomery County Court of Common Pleas. Prior to the entry of his plea, Charles had filed a motion to suppress evidence, which the trial court overruled. Charles now appeals.
On May 11, 1998, Charles was indicted on one count of possession of "Cocaine that is not Crack Cocaine." On May 19, 1998, he entered a plea of not guilty. Charles filed a motion to suppress evidence on June 23, 1998. The trial court conducted a suppression hearing on July 30, 1998. The evidence presented at the hearing was as follows.
Brian Deckard, a police officer with the Five Rivers Metro Parks and the Clay Township Police Department, testified that on May 2, 1998 at approximately 3:00 p.m., he had seen Charles driving at an excessive rate of speed along a road in the Eastwood Metro Park. Officer Deckard followed Charles and determined his speed to be approximately twenty miles over the speed limit. Charles pulled into a driveway in the park, stopped the car, and started to back up when Officer Deckard blocked his path.
After calling in the stop, Officer Deckard approached the driver's side of Charles's vehicle. One passenger was sitting in the front seat. Officer Deckard explained to Charles the reason for the stop and asked him to display his driver's license. Charles responded that he did not have it with him. When asked to produce proof of insurance, Charles stated that he did not know if it was in the car because the car belonged to his wife, who was in the hospital. Charles told Officer Deckard his name, date of birth, and social security number. Officer Deckard walked to his vehicle "to run a check to see if he had a valid driver's license," and Officer Boshears, who had arrived at the scene shortly after the stop, asked the passenger for identification. The passenger told him that he did not have any identification with him. Officer Boshears frisked the passenger and found his wallet, which contained his driver's license. Officer Boshears placed the passenger in the back seat of his cruiser, and when he called in the passenger's information, he learned that there was an active warrant for the passenger's arrest.
Meanwhile, Officer Deckard was sitting in his vehicle for approximately four to six minutes waiting for a report on Charles. He observed Charles making a call on his cellular phone, acting "very nervous," "dipping a lot," and "reaching around a lot" as if to grab something from the glove compartment. This conduct, coupled with the facts that Charles had not produced any physical identification and that the passenger had lied and had a warrant for his arrest, caused Officer Deckard to be concerned that Charles may have been reaching for a weapon. Officer Deckard then decided that "for the safety of everyone since [he] didn't know who actually [he] had here, to have him step out of the vehicle and * * * to place him in the back of [his] vehicle."
Officer Deckard ordered Charles to exit the vehicle and told Charles that, while waiting for the report from dispatch, he wanted to place Charles in the back seat of his vehicle. When Officer Deckard asked Charles if he would mind being patted down, Charles refused and "said that he did not want to be searched unless his attorney was present." Officer Deckard asked if he had something to hide, and Charles did not answer. Charles then asked if he was under arrest, and Officer Deckard said, "yes you are." Officer Deckard asked Charles to place his hands on the back of the car and to spread his feet, and Charles complied. Officer Deckard noticed that Charles's "knuckles were getting white and he was looking around," that his eyes were dilated, that he was "sweating profusely," and that he was in "fight or flight" mode, meaning that "he was either looking to fight or run." Along with another officer, Officer Deckard patted him down and noticed a "two-inch by two-and-a-half inch square" lump in Charles's right pant pocket that "looked rigid" and did not look like "anything normal, as far as like a lighter or anything of that nature." Officer Deckard ran his hand over the object, which felt solid, rigid, and "bunched up." Officer Deckard knew that the object was not a gun, but he suspected that it might have been some other type of weapon, such as a switchblade, a zip gun, or an improvised weapon that shoots projectiles. He asked Charles "if there was anything in his pockets that was gonna stick [him]" or anything that he should be concerned about, and Charles would not answer. Officer Deckard then reached into the pocket and pulled out keys and an alarm remote. In the process, a clear "plastic baggie" came partially out of Charles's pocket, and Officer Deckard observed the substance contained in the baggie to be cocaine. He pulled the baggie the rest of the way out of Charles's pocket and then continued to pat him down. He also removed $577 cash from Charles's left pocket. Charles was then handcuffed, placed in the back seat of the cruiser, and Mirandized. According to Officer Deckard, Charles was "still really nervous" and uncooperative. Charles's "girlfriend" later arrived at the scene with Charles's driver's license.
Officer Deckard stated on cross examination that he had told Charles that he was under arrest because Charles had been unable to produce physical identification and had objected to the pat-down search. Officer Deckard testified, "at that point, he wasn't actually under arrest, and I explained that to him" and "I told him that I wanted him to sit in the back of my car." On redirect examination, Officer Deckard testified that he had told Charles that he was under arrest because Charles "did not want to cooperate" and that "this can all be over within a second if he [would] just let me pat him down." Officer Deckard further stated that, had the cocaine not been discovered, Charles may have received a citation for the traffic violation and would have been free to leave.
The trial court overruled Charles's motion. It concluded that Officer Deckard had acted appropriately in making the traffic stop of Charles's vehicle, in ordering Charles out of his vehicle, in conducting the pat-down search for weapons, in investigating the object in Charles's pocket, and in seizing the baggie of cocaine.
Charles changed his plea to one of no contest, which the trial court accepted. The trial court found Charles guilty and imposed five years of community control sanctions and a six-month driver's license suspension. This appeal is prompted by the trial court's decision to overrule Charles's motion to suppress. Charles raises four assignments of error, two of which we will address together.
 I. THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT-APPELLANT WAS NOT UNDER ARREST PRIOR TO AND DURING THE SEARCH BY OFFICER DECKARD.
 II. DEFENDANT-APPELLANT'S ARREST WAS WITHOUT PROBABLE CAUSE AND WAS ILLEGAL THEREFORE EVIDENCE OBTAINED AS A RESULT OF HIS ARREST SHOULD HAVE BEEN SUPPRESSED.
Charles contends that, contrary to the trial court's finding, Officer Deckard had placed him under arrest prior to conducting the pat-down search and that the arrest was not based on probable cause. The state responds that Charles was not under arrest at that time and that the pat-down search was a permissible protective search for weapons.
The United States Supreme Court has not decided the question of whether a pat-down search following an officer's expression that the suspect is under arrest may later be justified as an investigative stop under Terry v. Ohio (1968), 392 U.S. 1. See 4 LaFave, Search and Seizure (3 Ed. 1996), 46-47, Section 9.2(e). We are aware of no Ohio cases addressing this question. In People v.Stevens (1973), 183 Colo. 399, 405-406, 517 P.2d 1336, 1339, the Colorado supreme court concluded:
 Defendant argues that since the police characterized the detention in the conference room as an arrest, the People must show probable cause to arrest; whereas, if the apprehension was characterized as a stop, something less than probable cause will suffice. Attaching such significance to these labels is misplaced. These labels are merely a shorthand way of describing different degrees of intrusions on Fourth Amendment rights of privacy and should not be confused with the underlying analysis in deciding whether the particular intrusion was justified under the circumstances.
* * *
 [L]abeling the detention as an arrest does not, per se, require that the arresting official have had probable cause to "arrest" the defendant with all the consequences that an "arrest" entails. The proper inquiry is whether the seizure was reasonable which turns on "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." (Citations omitted.)
See, also, Downs v. State (Del. 1990), 570 A.2d 1142, 1144
("[W]ords cannot transform a mere `stop' into an `arrest.' The focus is on what the police did rather than on what they said.");State v. Walton (1978), 159 N.J.Super 408, 414, 388 A.2d 268, 271
("The characterization of the detention as an `arrest' is not necessarily dispositive of the legal effect of such action."). LaFave explains:
 [I]f an officer tells a suspect that he is under arrest and then conducts the kind of weapons search which would pass muster under Terry, a later determination that there were not grounds for arrest should not render inadmissible the discovered weapon if there were in fact adequate grounds for a stop and frisk.
LaFave, at 48.
We agree that when an officer conducts a protective weapons search within the confines of Terry, any evidence seized need not be suppressed for lack of probable cause to arrest simply because the officer characterized the encounter as an arrest. Where the police intrusion upon the defendant's person is limited to a pat-down search for weapons, the constitutionality of the pat-down search depends on its compliance with the principles set forth inTerry, as discussed infra.
Charles's first and second assignments of error are overruled.
 III. THE SEARCH OF DEFENDANT-APPELLANT WAS NOT SUPPORTED BY FACTS SUFFICIENT TO FORM A REASONABLE BELIEF THAT DEFENDANT-APPELLANT WAS CURRENTLY ARMED AND DANGEROUS.
Charles argues that Officer Deckard did not have a reasonable suspicion that he was armed and dangerous to justify the pat-down search.
"[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Pennsylvaniav. Mimms (1977), 434 U.S. 106, 111, fn. 6. A Mimms order may be given "even without suspicion of criminal activity." State v.Evans (1993), 67 Ohio St.3d 405, 407. Charles does not challenge, and the record certainly supports, the lawfulness of the initial traffic stop. Pursuant to Mimms, Officer Deckard was entitled to order Charles to exit his vehicle.
When a police officer observes unusual conduct leading him reasonably to conclude that "criminal activity may be afoot" and that a suspect "may be armed and presently dangerous," he may briefly detain the suspect and make "reasonable inquiries" to confirm or dispel his suspicions. Terry, 392 U.S. at 30. Based on a justified belief that a suspect is armed and dangerous, an officer may conduct a pat-down search of the individual, limited in scope to measures necessary to determine whether he is indeed carrying a weapon. Id. at 25-26. The state must show at the suppression hearing not that the officer was certain that the suspect was armed, but rather, the existence of circumstances that would cause a reasonable person to believe that his safety was in danger. Id. at 27. The reasonableness of an officer's suspicions depends on the totality of the circumstances. United States v.Cortez (1981), 449 U.S. 411, 417; State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus.
The trial court found that Officer Deckard had been justified in conducting the pat-down search for weapons based on his reasonable concerns for his safety. In our judgment, it was reasonable for Officer Deckard to believe that Charles was armed and dangerous based on his observations of Charles's nervousness, his reaching movements, his inability to produce physical identification, the passenger's untruthful statement that he had not possessed any physical identification, and the discovery of an active warrant for the passenger's arrest. Although any of these factors viewed in isolation may not have caused a reasonable person in Officer Deckard's position to fear for his safety, the totality of the circumstances legitimately aroused Officer Deckard's safety concerns. Thus, Officer Deckard was justified in conducting the pat-down search.
The third assignment of error is overruled.
 IV. THE SEIZURE OF THE COCAINE FROM DEFENDANT-APPELLANT'S POCKET WAS NOT THE PRODUCT OF A SEARCH INCIDENT TO A LAWFUL ARREST NOR A SEARCH CONSISTENT WITH THE PLAIN FEEL DOCTRINE.
Charles insists that the cocaine should have been suppressed because it was discovered during a warrantless search of his person that was not conducted incident to a lawful arrest and was not justified under the plain feel doctrine. The state concedes that the search was not one incident to a lawful arrest, but it urges that the cocaine was seized pursuant to the plain feel exception to the Fourth Amendmen warrant requirement. The trial court concluded that Officer Deckard had permissibly investigated the lump in Charles's pocket pursuant to the plain feel exception to the warrant requirement and that, because the baggie of cocaine "was found as a result of a lawful investigation," it was "found in accordance with the Fourth Amendment guidelines."
In Minnesota v. Dickerson (1993), 508 U.S. 366, 375-376, the supreme court held that when a police officer conducting a lawful pat-down search "feels an object whose contour or mass makes its identity immediately apparent," he may retrieve the object. The Supreme Court of Ohio in Evans pointed out that Dickerson involved the seizure of "nonthreatening contraband when its incriminating nature is `immediately apparent' to the searching officer through his sense of touch." Evans, 67 Ohio St.3d at 414, fn. 5. InEvans, the court authorized the seizure of an object that the officer reasonably believed could have been a weapon. Id. at 415-416. The Evans court stated:
 [W]hen an officer is conducting a lawful pat-down search for weapons and discovers an object on the suspect's person which the officer, through his or her sense of touch, reasonably believes could be a weapon, the officer may seize the object as long as the search stays within the bounds of Terry * * *.
Id. at 416.
Officer Deckard's testimony that he thought the lump in Charles's pocket could have been a weapon supported the trial court's conclusion that he reasonably investigated the lump by reaching into Charles's pocket and retrieving keys and an alarm remote. Thus, the plain feel exception justified Officer Deckard's seizure of these objects.
Furthermore, when Officer Deckard pulled out the keys and the alarm remote, the baggie of cocaine, which was not crack cocaine, came part of the way out of the same pocket. Officer Deckard testified that he had immediately recognized the substance inside the baggie to be cocaine. Although the trial court did not discuss the plain view doctrine, we believe this exception to the warrant requirement justified the seizure of the baggie of cocaine. Under the plain view doctrine, if an officer is lawfully positioned to view an object whose incriminating character is immediately apparent and the officer has a right of access to the object, it may be seized without a warrant. See Horton v.California (1990), 496 U.S. 128, 136-137. Because Officer Deckard was lawfully in the position to view the baggie, which he immediately recognized to contain cocaine, its warrantless seizure was justified under the plain view exception. Thus, the trial court correctly determined that the cocaine was not subject to suppression.
The fourth assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, dP.J. and YOUNG, J., concur.
Copies mailed to:
Lynda K. Ashbery
Richard S. Skelton
Hon. James J. Gilvary
c/o Hon. Barbara P. Gorman