Anthony SIRIMARCO, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 7043.

United States Court of Appeals
Tenth Circuit.

Jan. 15, 1963.

Petition for Rehearing En Banc
Denied March 20, 1963.

Certiorari Denied June 10, 1963.
See 83 S.Ct. 1696.

Eugene Deikman, Denver, Colo., for appellant.

James A. Clark, Asst. U. S. Atty. (Lawrence M. Henry, U. S. Atty., was with him on the brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and SETH, Circuit Judges.

LEWIS, Circuit Judge.

Sirimarco was convicted upon each of two counts of an indictment charging, in Count 1, the uttering of a counterfeit $20 Federal Reserve Note and, in Count 2, the possession of twenty-nine counterfeit Federal Reserve Notes, all in violation of 18 U.S.C.A. § 472. He was sentenced to concurrent terms of four years upon each count. He appeals, contending that the court improperly admitted into evidence twenty-nine counterfeit notes that had been obtained by the government as the result of a an unlawful search and seizure. There is no critical dispute in the evidence.

On April 21, 1961, Sirimarco drove up to a restaurant near Starkville, Colorado, in an automobile bearing New Jersey plates, ate lunch and paid for the meal with a counterfeit note and then drove off. The restaurant owner immediately discovered the fraud and swore out a complaint charging a violation of Colorado state law. A warrant was issued. Information of the incident and the existence of a Colorado complaint and warrant was radioed to New Mexico state authorities. Sirimarco was picked up in a road block near Raton, New Mexico, arrested by the New Mexico police and held for Colorado. His car was searched by the New Mexico officers at the time of arrest but nothing was discovered or seized. On the same day, Colorado officers, armed with identification and copies of the warrant and complaint, took Sirimarco and his car back to Trinidad, Colorado, and placed him in jail. Federal authorities at Denver, Colorado, were then informed that Sirimarco was in custody.

The next day, a Denver agent of the Secret Service arrived in Trinidad, talked

to Colorado authorities, inspected the counterfeit bill and determined for himself that it was counterfeit, and thereupon searched Sirimarco's car. He discovered and seized twenty-nine additional counterfeit bills secreted in the front seat of the vehicle. At such time Sirimarco was not under federal arrest, had not consented to a search of his vehicle, and no warrant was obtained.

■ Appellant in attacking, and the government in defending, the ruling of the trial court admitting into evidence the fruits of the subject search argue at length relative to the law of search as an incident to lawful arrest. Appellant asserts that the action of the Colorado officers in entering New Mexico and taking Sirimarco back to Colorado without extradition proceedings was an extraterritorial and unlawful arrest. In adopting such premise appellant totally ignores (as does the government) the interstate compact existing between the states of New Mexico and Colorado. N.M.S.1953, 41–20–1; C.R.S.1953, 74–3–1 to 8. But even if the Colorado arrest was lawful, and we believe it was, we know of no rule justifying a federal search made as incident to a state arrest. Here there was no federal arrest and the search was conducted by the federal agent. In fact the Colorado police had waited for the federal agent's arrival for the very purpose of allowing him to conduct the search. It seems clear that the validity of the subject search is not properly tested against the background of the Colorado arrest and that counsels' emphasis upon this aspect of the case is misdirected.

■■ Before making the search the government agent had information which constituted probable cause for him to believe that Sirimarco had committed the federal offense of passing a counterfeit bill and, further, that the vehicle had been used to transport or facilitate the transportation or possession of a counterfeit bill. The existence of probable cause alone is not justification for a search without warrant. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93

L.Ed. 153; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828. But the existence of probable cause is justification for the seizure of a vehicle which has been used to transport or facilitate the transportation or possession of contraband so designated by statute. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. Counterfeit money is designated as contraband, 49 U.S.C.A. § 781 (3) and the provisions of sec. 783 provide:

"* * * It shall be the duty of any officer, agent, or other person so authorized or designated, or authorized by law, whenever he shall discover any vessel, vehicle, or aircraft which has been or is being used in violation of any of the provisions of this chapter, or in, upon, or by means of which any violation of this chapter has taken or is taking place, to seize such vessel, vehicle, or aircraft and to place it in the custody of such person as may be authorized or designated for that purpose by the Secretary of the Treasury, to await disposition pursuant to the provisions of this chapter and any regulations issued hereunder."

■■ We have no doubt that a vehicle which has been lawfully seized pursuant to the mandate of sec. 783 may be searched without a warrant or consent of possessor or owner and that evidence so discovered may be properly admitted in prosecutions charged under 18 U.S.C.A. § 472. And it is equally clear that evidence obtained through the unlawful search of a vehicle may not be admitted in such a prosecution. The question posed in the case at bar is thus whether or not it is necessary to explore the agent's intent and make a factual determination of which came first, the search or the seizure. We do not think this case turns upon such a nicety of fact or rea-

soning, under the totality of circumstances.[1]

■■■ The legality of a search cannot be balanced against the good faith of the searcher or the extent or correctness of his legal knowledge. An unlawful search, though made in the honest belief of right, remains unlawful and its fruits remain forbidden. A lawful search, though not made under subjective claim or knowledge of right, remains lawful and evidence so obtained is admissible. Here, the agent took control of the car, searched it and seized contraband. He intended to do what he did and his actions constituted a continuous course of conduct. The conduct was justified because the agent had probable cause to seize the vehicle and the legality of his actions are not affected by his subjective beliefs.

We conclude that the evidence was lawfully seized and properly admitted into evidence.

The judgment is affirmed.

1. The trial court gave no supporting explanation for his ruling admitting the evidence but apparently based it on grounds other than those we consider controlling. The only testimony relating to the seizure of the car is as follows:

"Q. What time did you make the search? A. I would say about 9:00 or 9:30 a. m.

"Q. What happened to the car when you left Trinidad? A. The car was left in the custody of the Sheriff's office.

"Q. Had you seized the car? A. Yes, I did.

"Q. When did you do that? A. At the time that I went to the car.

"Q. At the time you made the search of it? A. Yes, sir.

"Q. How did you exercise that seizure? A. When I spoke to Mr. Sirimarco.

"Q. What did you say? A. I told him that his car was being seized.

"Q. When did you say that? A. Around noon.

"Q. So you exercised the seizure around noon, is that correct? A. Yes, sir.

. "Q. And you searched the car at 9:30 a. m.? A. Yes, sir.

"Q. So, at the time you searched the car, you had not seized it?"

(No answer.)

On Petition For Rehearing En Banc

Before MURRAH, Chief Judge, and PICKETT, LEWIS, BREITENSTEIN, HILL and SETH, Circuit Judges.

Rehearing denied.

MURRAH, Chief Judge (dissenting).

I would grant the petition for rehearing because, upon reflection, I am convinced that the seizure and consequent search, or the search and consequent seizure, as the case may be, is not constitutionally sustainable.

When the vehicle was seized, or when the federal officer declared the same to have been seized, it was parked by the side of the courthouse adjacent to the County Sheriff's office, and the accused driver was securely in jail. There was no likelihood that the automobile would be moved or in any way molested until judicial authority for the search and seizure could have been obtained. No reason or excuse is suggested for failure to obtain a search warrant.

"Mr. Fine: Your Honor, I didn't hear the answer to the question.

"The Court: Well, it is a matter of deduction, if he seized the car at 12 noon and he searched the car at 9:30, why, he seized it after he searched it.

"Mr. Fine: Well, I don't know, the witness was asked when he seized the car, and I didn't hear the answer, but I rose to object to the question on the ground there is no particular legal way you seize a car. You don't gather it to you, and I don't know that the witness—my question of the witness was did he intend to seize the car, which question he answered. I don't know that there is any prescribed form, and in effect my objection is that he asked the witness for a legal conclusion.

"The Court: The witness says he seized it and so certainly it is a proper question to ask him, 'When did you do it?' When a person says he did something, it is proper to ask him when. He must have something in his mind, the witness, as to when a seizure is made because he said he seized it. Your objection is overruled."

(But the question was never answered.)

It is conceded that probable cause alone did not authorize the search of the automobile without a warrant. Nor is the search and seizure sustained as an incident to a lawful arrest. Instead, the seizure is sustained on the authority of the statute which empowers federal officers to seize a vehicle which is subject to forfeiture for unlawful transportation of any contraband article. 49 U.S.C. § 783. The opinion seems to find constitutional sanction for this statutory authority in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. Those cases do grudgingly sanction the authority of the officers to stop and search a moving vehicle without a warrant, based on probable cause to believe that it is being used to transport contraband goods and "where it was not practical to secure a warrant because the vehicle can be quickly moved out of the locality of jurisdiction in which the warrant must be sought." But Carroll emphasized that "where the securing of a warrant is reasonably practicable, it must be used." And, the courts have been careful to scrutinize every transaction to make sure, (1) the existence of probable cause; and (2) the impracticability of securing a search warrant. And see Hart v. United States, 10 Cir., 162 F.2d 74, and cases cited; United States v. One 1957 Ford Ranchero Pickup Truck, 10 Cir., 265 F.2d 21. The decisions do recognize a distinction between statutory authority to search and seize things which it is unlawful for a person to have in his possession, such as counterfeit money, and private property in lawful possession. But the distinction has no relevancy here, for it is significant only when considered in connection with the prohibitions of the Fifth Amendment against self crimination. See Boyd v. United States, 116 U.S. 616, 624, 6 S.Ct. 524, 29 L.Ed. 746; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Weeks v. United States, 232 U.S. 383, 394, 34 S.Ct. 341, 58 L.Ed. 652; Silverthorne Lbr. Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; Carroll v. United States, supra; and see Frankfurter dissenting in Davis v. United States, 328 U.S. 582, 612, 66 S.Ct. 1256, 90 L.Ed. 1453; Harris v. United States, 331 U.S. 145, 165, 67 S.Ct. 1098, 91 L.Ed. 1399.

The effect of this decision is to hold that the officers may seize without a warrant for probable cause that which they could not search for probable cause. And, having seized, they may then search for and seize contraband. I have found no authority to sanction this circumvention of the constitutional mandate which safeguards the citizen against unreasonable searches by requiring judicial authority in the form of a search warrant, except under circumstances which precludes its timely issuance. If this decision is now to be the law of search and seizure, officers need no longer trouble themselves to secure a search warrant for the seizure of a vehicle, be it standing or moving, for, all they need to do is to decide for themselves whether there is probable cause to believe that it is being used to violate the federal law. The only recourse of the citizen is a retrospective judicial review of the officers' determination when the thing seized is sought to be used against him in a prosecution.

As I now view this decision, it opens up a new loophole for stealthy encroachment on the citizen's fundamental right to privacy—a right which the courts have so jealously guarded, because, as Mr. Justice Jackson once said: "We must remember that the extent of any privilege of search and seizure without warrant which we sustain, the officers interpret and apply themselves and will push to the limit. We must remember, too, that freedom from unreasonable search differs from some of the other rights of the Constitution in that there is no way in which the innocent citizen can invoke advance protection." See dissent in Brinegar v. United States, supra, 338 U.S. p. 182, 69 S.Ct. p. 1314, 93 L.Ed. 1879.

I am constrained to register my tardy protest.

HILL, Circuit Judge, concurs in the dissent.