No. 26383

**The People of the State of Colorado v. Chris Melvin Montoya**
(524 P.2d 76)

Decided July 1, 1974.

300

Dale Tooley, District Attorney, Second Judicial District, Brooke Wunnicke, Chief Appellate Deputy, Duff Mullen (Howard M.), Assistant, for plaintiff-appellant.

No appearance for defendant-appellee.

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an interlocutory appeal brought by the People pursuant to C.A.R. 4.1 from an order of the Denver District Court granting defendant's motion to suppress certain evidence. We reverse.

The evidence presented at the suppression hearing is as follows: On May 24, 1971, Officers Fugate and Fitzgibbons of the Denver Police Department were conducting a surveillance of a residence at 3859 Osage Street in Denver. They were operating in tandem at this time with Detective Frazzini who had obtained a "no knock" search warrant for the premises at 3859 Osage Street earlier that day. The officers had information through an informant that the defendant had been selling narcotics from the above address, and that drugs had in fact been seen on the premises the previous day by the informant. All three of the officers had conducted sporadic surveillance of the premises over the previous ten days to two weeks and had personally observed known narcotics users entering and leaving the premises.

Shortly after 1:00 p.m., Officers Fugate and Fitzgibbons began observing the premises from their parked car through binoculars. Detective Frazzini had positioned himself so as to be able to observe the rear of the premises. Shortly after 1:00 p.m. a car pulled up to the front of the house. A woman and small child exited the car and went into the home. The

officers made radio contact and determined to execute the search warrant as someone was in the house.

As Officers Fugate and Fitzgibbons were approaching the house, Officer Fugate observed the defendant come out of the house onto the front porch, jump over the porch railing, disappear momentarily, and jump back onto the porch. The defendant then looked up and down the street and walked to the car that had just driven up, got in and drove away.

The officers again made radio contact and Frazzini ordered the other officers to stop the defendant. Shortly thereafter, Officers Fugate and Fitzgibbons stopped defendant's car. Officer Fitzgibbons approached defendant's car from the driver's side, and Officer Fugate approached the car from the passenger side. Fugate observed defendant's hand jammed into the crack between the back and the bench of the front seat as he approached the vehicle. Shortley thereafter, when the defendant was exiting his car, he removed his hand from the crack and Fugate saw several balloons containing what he believed to be heroin pop up and roll onto the seat. Fugate opened the door of the car and seized the balloons. At this point the defendant was placed under arrest and advised of his rights.

A recent series of decisions of this court commencing with *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971), and culminating with *People v. Stevens,* 183 Colo. 399, 517 P.2d 1336 (1973), have held that officers may make a limited stop in the nature of a field investigation on less than probable cause. The test for such a field investigation was set out in *Stone, supra:*

"In order lawfully to detain an individual for questioning, (1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose." 174 Colo. 504, 509.

In *People v. Stevens, supra,* we noted that the constitutional basis for an arrest or a stop does not depend upon the label given such police activity.

"These labels are merely a shorthand way of describing

different degrees of intrusions on Fourth Amendment rights of privacy and should not be confused with the underlying analysis in deciding whether the particular intrusion was justified under the circumstances." 517 P.2d 1336, 1339. (Citations omitted.)

■ We hold that the stop and limited detention in this case comes within the *Stone* guidelines. The officers had information that narcotics were being sold on the premises just exited by the defendant. They observed him jump from the porch, disappear momentarily from sight, reappear and enter a car and drive off. This information and conduct gave rise to a reasonable belief that the defendant had committed or was about to commit a crime. Thus, the officers were justified in stopping him for a brief interrogation. The limited intrusion of a brief, on the street, stop was justified under the circumstances of this case. *People v. Stevens, supra.*

■ Almost immediately after the defendant was stopped, Officer Fugate observed what he believed to be balloons filled with heroin pop into plain view on the front seat of the vehicle. Since Fugate was about to engage in a valid *Stone* field investigation, he could legitimately seize these items which were in "plain view." *Avalos v. People,* 179 Colo. 88, 498 P.2d 1141 (1972); *People v. Gurule,* 175 Colo. 512, 488 P.2d 889 (1971); *Stone v. People, supra.* Accordingly, it was error to grant defendant's motion to suppress.

The order of the district court is reversed and the cause remanded for further proceedings consonant with the views expressed herein.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE GROVES concur in the result only.

MR. JUSTICE ERICKSON dissents.

MR. JUSTICE GROVES concurring in the result:

I concur in the result for the same reason that I so concurred in *People v. Stevens,* 183 Colo. 399, 517 P.2d 1336 (1973), *viz.:* that there was probable cause to arrest and, therefore, the detention was justified.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent.

The majority opinion justifies the initial stop of the defendant Montoya as an investigative stop based upon reasonable suspicion that the individual has committed, or is about to commit, a crime, and thus coming within the "Stone" area of permissible police conduct. *See Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971). To justify this particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant that intrusion. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Yet the record of the suppression hearing fails to disclose any reasonable suspicion on the part of the police officers that the defendant had committed, or was about to commit, a crime at the time he was stopped in his automobile.[1]

Indeed, the testimony of Detective Frazzini shows that it was merely the fact of the search warrant that caused the officers to stop the defendant some blocks from the house.[2] Consequently, the officers were not relying on "specific or articulable facts" which would amount to a reasonable suspicion to justify stopping the defendant as he was driving

---

[1] "Q. Officer Fugate, why did you stop Mr. Montoya?

"A. The directions of Detective Frazzini, we were instructed to stop the vehicle.

"Q. For no other reason? He wasn't violating any law at that time, was he?

"A. We suspected he may possibly be leaving with our evidence.

"Q. Excuse me. Was he violating any law at that time?

"A. No, sir, he wasn't.

"Q. Was he carrying anything [at the time he left the house]?

"A. I don't know that, sir.

"Q. You didn't see anything in his hands?

"A. No, sir."

[2] "THE WITNESS: If I didn't have the warrant for the reason for the stop, I wouldn't have got the heroin, because we wouldn't have stopped him based on driving down the street, and I depended on this other information.

"Q. Do I understand that this warrant was addressed to the automobile and the person of Chris Montoya?

"A. No, sir. We had the warrant for the house. He left the house, and I didn't know if he had the heroin on him or in his vehicle, or in the house — "

his automobile. *Terry v. Ohio, supra.* It was because of this testimony that the trial court found that ". . . the contraband was taken pursuant to and under the purported authority of the warrant, and as a consequence the position of the State has to fall."

Whether the seizure was reasonable depends upon whether the officers' action was justified at its inception. *Terry v. Ohio, supra.* At the suppression hearing, the prosecution sought to justify the seizure of the balloons solely upon the grounds that the police held a valid search warrant. The warrant cannot support the search of Montoya's car or the seizure of the balloons. The search warrant had the word "person" crossed out and specified only the dwelling house as the object of the search. The Fourth Amendment requirement that warrants "particularly" describe "the person or things to be seized" is intended to prevent the seizure of óne thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431, *reh. denied,* 380 U.S. 926, 85 S.Ct. 879, 13 L.Ed.2d 813 (1965); *Marron v. United States,* 275 U.S. 192, 41 S.Ct. 74, 72 L.Ed. 231 (1927); *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1885). *Compare Colo. Const.* Art. II, Sec. 7; Crim. P. 41. On appeal, the People have shifted their emphasis and now argue that the stop can be justified as a "field investigation" under the *Stone* doctrine. Since this argument was not presented to the trial judge, it is not properly before this court, and we should not rule that the trial judge's decision was erroneous when, in fact, he was not given the opportunity to consider the merits of the claim which is raised on appeal. In my opinion, we must apply the rule enunciated in *People v. Aguilar,* 173 Colo. 260, 477 P.2d 462 (1970), in which we said that new matters which are raised for the first time on interlocutory appeal from a motion to suppress evidence are not timely made and thus do not warrant consideration by this court. *See* Crim. P. 12(b)(2). Absent a showing by the People of plain error, we

cannot usurp the function of the trial judge and rule on the merits of an argument advanced for the first time on appeal. For this reason alone, I would reject the People's belated argument and affirm the ruling of the court below.

Procedural defects aside, I do not see how the facts can support the stop under the guise of a "field investigation." When Montoya emerged from his house, he apparently did not see the police officers who were maintaining surveillance. He had no reason to suspect that a search was imminent. He was not fleeing the scene. The police testified that they did not see him carrying anything from the house. There was no reason to believe that the intended search of the house had been jeopardized.

Once again, the "Stone area" which this court defined as an implementation of *Terry v. Ohio, supra,* has been expanded far beyond its original scope. *See* my dissenting opinions in *People v. Stevens,* 183 Colo. 399, 517 P.2d 1336 (1973); *People v. Marquez,* 183 Colo. 231, 516 P.2d 1134 (1973); and *People v. Gurule,* 175 Colo. 512, 488 P.2d 889 (1971).

By using the "field investigation" rationale, this court has allowed the police to effectively bootstrap themselves over the particularity requirement of search warrants.
"An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment. 'Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely cannot be less stringent where an arrest warrant is obtained. Otherwise, a principal incentive now existing for the procurement of arrest warrants would be destroyed.' " *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). [Citation omitted.]
*See also, Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

In my view, *Stone,* an opinion with which I concurred, has

been transformed into a monster by this court through an expansion of the "Stone area" far beyond the kind of police-citizen encounters that form the background of the *Terry* doctrine and justify the warrantless intrusion into a citizen's privacy. *See* LeFave, *"Street Encounters" and the Constitution: Terry, Sibron, Peters, and Beyond,* 67 Mich. L. Rev. 40 (1968). By merely rewording and applying the language of *Terry* and *Stone,* while ignoring the reasoning which supports those decisions, the majority evades the responsibility of reconciling different fact situations under the same structural analysis. Thus, wide latitude is given to the application of the *Terry-Stone* principle, while at the same time ostensibly reaffirming the quite restrictive test for invoking the principle which we delineated in *Stone.* I cannot concur in the court's wholesale and unjustifiable extension of *Stone.* Nor do I think the seizure of the balloons containing heroin can be justified under the "plain view" doctrine. The only thing in plain view were the balloons themselves. The contents at the time of seizure were not in plain view. The balloons, by themselves, were not contraband items, nor were they presumptive evidence of possession of contraband giving cause to arrest. In *People v. Olson,* 175 Colo. 140, 485 P.2d 891 (1971), this court held a seizure of a water pipe and roach clip which led to the arrest of the defendant for possession of marijuana to be unreasonable because these items could not furnish probable cause to arrest, notwithstanding the testimony of a narcotics expert that the items were classifiable as "narcotics paraphenalia." Although the presence of the balloons in the automobile might have been a suspicious circumstance, mere suspicion will not justify a warrantless arrest. *People v. Olson, supra; People v. Nanes,* 174 Colo. 294, 483 P.2d 958 (1971); *Falgout v. People,* 170 Colo. 32, 459 P.2d 572 (1969).

The People have attempted to raise the presence of the balloons to the level of probable cause by arguing that the police, through experience, have learned that heroin is often carried inside balloons. A similar argument was properly rejected by the California Supreme Court in *Remers v.*

*Superior Court,* 2 Cal.3d 659, 470 P.2d 11, 87 Cal. Rptr. 202 (1970), where an officer relied on his special knowledge and experience that dangerous drugs are often packaged in tinfoil in seizing a tinfoil package from the defendant. The California court held that seizure unreasonable because a man of "reasonable caution," even possessing this special knowledge, would not be justified in assuming that a tinfoil package will contain drugs. The legality of the search and seizure is not affected by the subjective beliefs of the officers, except under very limited circumstances. *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 906 (1973); *Terry v. Ohio, supra; Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1973); *Beck v. Ohio, supra.* An unlawful search, though made in the honest belief of right, remains unlawful, and its "fruits" remain forbidden. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Nathanson v. United States,* 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933); *Sirimarco v. United States,* 315 F.2d 699 (10th Cir.), *cert. denied,* 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1032 (1963).

In this case, it was only after the initial stop, arrest, and search were made that there was a shred of evidence that a crime was in the process of being committed. I would affirm the order to suppress.