Irving Lang, J.
OBy direction of the Court of Appeals this court imust decide the question of whether probable cause existed for the arrest and incidental search of the defendant Vino Green independent of certain search .warrants. The facts and background bear detailed recapitulation.
On May 6,1971 detectives of the Special Investigations Unit of the Police Department’s (Narcotics Division applied to Justice Harold OBirns of the Supreme Court, Hew York County for a series of interrelated search warrants for persons and premises allegedly involved in a drug-selling enterprise .
The key affidavits and warrants were directed at the apartment of the defendant Vino Green on East 119th Street in Manhattan, the person of Vino Green and any other person found therein; and the apartment of Betty Lucas on West 138th Street *628 in Manhattan, the person of Betty Lucas and any other person found therein.
The officers’ affidavits were based primarily on information from a previously reliable registered police informant, who apparently had infiltrated the operation and had observed narcotics in the questioned premises on May 3,1971. Justice Brans found probable cause and signed the warrants.
On May 7,1971 the officers executed the warrants. First, they went to West 138th Street where they observed Green leaving the Lucas apartment. They stopped Green, searched him, and found about an ounce of heroin and a key to the Lucas apartment. They entered the Lucas apartment and observed a large quantity of narcotics and cutting paraphernalia in plain view. A .subsequent search of the Green apartment revealed no additional contraband.
The defendant, after his arrest and indictment, moved to siippress the evidence seized. This court found the warrants valid and denied the motion. The defendant pleaded 'guilty, was ■sentenced to five years ’ imprisonment .and appealed. The Appellate Division of the ¡Supreme .Court, First Department, unanimously affirmed (People v. Green, 41 A D 2d 918).
However, the Court of Appeals, in a 4 to 3 decision, disallowed the search under the authority of the warrants (People v. Green, 33 N Y 2d 496).
The thrust of the majority opinion was that the language of the Green warrant authorized the search of ¡his person only at his East 119th Street premises named in the .warrant. Further, the majority held that Green could not be searched under the authority of the Lucas warrant permitting the search of any persons “ found therein, ” since the officers “ did not encounter or search the defendant upon these premises ” even though the search .was conducted <f just beyond the threshold. ” (People v. Green, 33 N Y 2d 496, 499.)
■Since the original hearing was primarily concerned with the validity of the ¡warrants per se, the Court of Appeals remitted the case to this court for a determination as to whether probable cause existed for the arrest and incidental search of the defendant.
To make this determination this court conducted extensive hearings. Certain significant items were .adduced at these hearings. First, a tape recording between an Assistant District Attorney and the informant clearly established the existence (and identity) of the informant and the fact of the communica *629 tion ¡which formed the basis for the warrants.* (People v. Malinsky, 16 N Y 2d 86.) Secondly, on tape the informant related in detail how the defendant sold ‘ ‘ quarters ’ ’ from his apartment and that Betty Lucas would “ cut the stuff” for sale in her apartment. Thirdly, the court viewed the tremendous quantity of narcotics and mixing materials found in plain view upon 'the officers’ entry into the Lucas apartment.
Upon the conclusion of the hearings it became evident that three questions had to be resolved for a determination of the issues. 1. Was there ¡probable cause to arrest the defendant and search incidental thereto at the time he was stopped and searched at the threshold of the Lucas apartment? 2. Was there probable cause to arrest the defendant for the possession of the drugs found in the Lucas apartment? 3. Was there justification to detain Green pending the search of the Lucas and Green apartments?
PROBABLE CAUSE TO SEARCH AT THE LUCAS THRESHOLD
The District Attorney argues that there was legal justification for the arrest and search of Green in the hallway near the Lucas apartment independent of the warrants. He claims that the information .from the reliable informant that the defendant and Lucas were joint drug dealers, coupled with the observation of narcotics in the suspected premises, gave cause to the police to arrest Green and search him.
I disagree. If the District Attorney’s position were tenable, then the 'Court of Appeals could have found probable cause on the record before it without remanding to this court. Nor can it be seriously contended that our highest court intended to make it easier for the police to search without warrants than with them.
At best, the evidence indicates that some narcotics were observed in the apartments by the informant some four days prior to the arrest. To hold that a suspected drug dealer can be arrested for possession of drugs allegedly seen by an informer four days before would be unsound public policy — an open invitation to the police to make warrantless searches. ¡Such searches are per se unreasonable (Katz v. United States, 389 U. S. 347); nor were there “ exigent circumstances ” present *630 which would justify the search (Coolidge v. New Hampshire, 403 U. S. 443, 460). In sum, with limited exceptions, the law encourages, indeed mandates, the obtaining of warrants.
There .are, of course, situations where the right to arrest ■without a .warrant exists, even when an invalid warrant is obtained. 'For example, suppose that an undercover agent purchases drugs from a seller and sometime thereafter (as is often the practice) a warrant is obtained to search the seller and his premises. Even if the warrant were in some manner defective, the right to arrest for the previous illegal sale and to search the person of the .seller would still exist. Or, in the instant case, if the informant on May 7 had seen Green in physical possession of drugs and had told the police, an arrest would have been justified. No .such ¡situation exists here. There was no immediacy ¡of information justifying arrest nor was there a pre-existing right to arrest. In fact, what is present here is clearly and classically a situation calling for judicial intervention via a warrant, particularly since the primary direction of the police action was .a search for drugs rather than an arrest. I hold, therefore, that there was insufficient probable cause to arrest Green at the entrance to the Lucas apartment. However, this is not dispositive of the issue.
PROBABLE CAUSE TO ARREST APTBR THE LUCAS SEARCH
The Court of Appeals never found that the search warrant for the Lucas apartment was invalid. It merely held that the search of the person of Vino Green outside of the Lucas apartment exceeded the ¡scope of both the Lucas and Green warrants.
The ¡search of the Lucas apartment immediately after the stopping of Green was a valid search ¡under the original Lucas warrant. That search revealed large amounts of drugs and related materials in plain view. Having seen Green leaving the Lucas apartment, and having information that Green and Lucas were mutually engaged in drug dealing operations, the detectives obviously had probable cause to arrest Green for illegal possession of the vast ¡amount of drugs found in the Lucas apartment. Indeed, not only was there probable cause to arrest Green for the narcotics in the Lucas premises, the Court ¡of Appeals held that ¡such evidence was sufficient to- justify a conviction in a similar situation (People v. Eisen, 25 N Y 2d 1005; see, also, People v. Reisman, 29 N Y 2d 278). Thus, although there was no probable cause to arrest Green and s,earch bim when the officers first observed him emerging from *631 the Lucas apartment, there was probable cause to arrest and search him moments later after the .search and discovery of drugs in that apartment.
The final areas.to be explored are whether the discovery , of . ihe,heroin on Green’s person was tainted by the original improper search, was the product of an unlawful detention, dr was untainted as the nroduct of a lawful “ inevitable discovery.”
DETENTION. AT THE THRESHOLD AND “ INEVITABLE DISCOVERY ”
Did the original improper search of Green have any impact on the legality of the police entry into the Lucas apartment? While it is true that the police entered the Lucas premises with a key found on Green, it is equally unquestioned that the police were armed ¡with a valid warrant for the search of the Lucas apartment. The entry would have occurred even if Green had not been searched, even if he were not there. The police had a judicial mandate to enter and search the Lucas apartment even-if, as might very well have been the case, it became necessary to break, in after giving notice of their presence and authority (CPL 690.50). Therefore the finding of the key to the Lucas apartment on 'Green in no way affected or “ tainted ” the discovery of drugs in that premises. N
* Assuming however that a delayed entry in the Lucas apartment would have given the defendant, if unrestrained, a sporting chance to get rid of the contraband on his person before the authorities would have had just cause to arrest and search him, the ultimate question is whether the police had a right to detain him on the Lucas threshold.
The right to detain individuals short of arresting them or subjecting them to a full-scale search has long been recognized in certain situations as a legitimate police function. In fact, the so-called ‘ ‘ stop and frisk cases ’ ’ are primarily court authorizations to detain individuals in suspicious circumstances, with the “frisk” considered as a proper precautionary prelude to the investigation (People v. Rivera, 14 N Y 2d 441; Sibron v.New York, 392 U. S. 40; Terry v. Ohio, 392 U. S. 1).
This is not to say that the police have an unfettered right to detain individuals at will, on whim or caprice. The determinative factor is whether th§. character of the detention is reasonable in the light of its purpose and particular circumstances (Cf. Morales v. New York, 396 U. S. 102; People v. Rosemond, 26 N Y 2d 101; People v. Montoya, 524 P. 2d 76 [Col.]).
*632 That Green’s detention was reasonable.is clear from- the following facts: (1) the police, had information that "Vino Green and Betty Lucas were trafficking in narcotics together; (2) the police had a search warrant for the Green apartment(3) the police had a search warrant for the Lucas apartment; (4) the police encountered Green emerging from the- Lucas apartment.
To assert that at this point the police had no right to do anything but permit Green to traipse merrily on his way. to possibly warn Lucas of the police presence, or to go to 'his own apartment to get rid of drugs that might ibe there, or flee to avbid arrest for drugs in either his or Lucas’ apartment, defies reason. As nature abhors a vacuum, so the law rejects ridiculous results. Under all the circumstances the police had a right to detain Green pending a search of the Green and Lucas apartments'.
. Once the right of the police to detain Green-is established, it is manifest that, despite the improper search of the defendant, the initial taint of the discovery of the heroin has been removed by the doctrine of “ inevitable discovery. ”
Simply stated, the doctrine of “inevitable discovery” holds that evidence illegally seized will not ¡be suppressed where it is shown that such evidence would have been properly gained even 'vsrithout the unlawful action (See 43 ALB 3d 385, Evidence —Fruit of the Poisoned Tree, and “ Inevitable discovery ’’ limitation, p. 404).
The continuing viability of this rule in New York was reaffirmed by Chief Judge Ftjld in People v. Fitzpatrick (32 N Y 2d 499).
"Nor does the recent case of United States v. Griffin (502 F. 2d 959, cert. den. 419 U. S. 1050 [Dec. 1974]) afford the defendant much solace. There, Government agents effected an illegal entry into an apartment to “ secure it ”, and found drugs in plain view while awaiting a search warrant which was obtained four hours later. In rejecting the “ inevitable discovery” argument, the Circuit ¡Court pointed out that no exigent circumstances, such as hot pursuit or danger of destruction of the drugs, existed. The court distinguished» Fitzpatrick (supra), ancLasserted the ¡basic proposition that absent “ exigent circumstances ” the police may not force entry of a home without a search warrant merely because they planned subsequently to get one. In- the instant case we have the opposite situation.' Green’s detention was justified because,the police had, obtained search warrants for his apartment and that of his confederate. Accepting “ inevitable discovery” in Griffin, ■ as that court pointed out, would have emasculated the search warrant require *633 ment bf the Fourth Amendment: Here, the use of that doctrine fortifies the constitutional mandate.
I hold that the detention of Green was justified and that the Subsequent search of the Lucas apartment, where drugs were foufid, ¡gave ¡probable cause for his arrest and search. The discovery of the drugs on his person as incident to the lawful arrest for possession of drugs in the Lucas apartment ¡was- inevitable in spite of the initial -Unlawful personal search.
The motion to suppress is denied. The. court adheres to its original sentence.
Provided that he occasions no delay in the process, the defendant is continued -on bail pending the inevitable appeal.

 The tape recording was not made specifically for this case but related to allegations of corruption between the informant and the officers with respect to payoffs after the seizure. This did not affect the accuracy of the original information. (See People v. Cameron, 44 A D 2d 355.)