585 P.2d 295 (1978)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Stephen M. CORNELIUS, Defendant-Appellant.
No. 77-054.
Colorado Court of Appeals, Div. III.
June 29, 1978.
Rehearing Denied July 20, 1978.
Certiorari Denied October 10, 1978.
*296 J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Linda Palmieri Rigsby, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Jonathan L. Olom, Stanley H. Marks, Denver, for defendant-appellant.
KELLY, Judge.
Stephen M. Cornelius was convicted of possession of a narcotic drug. Seeking reversal, he contends, among other things, that his motion to suppress evidence should have been granted, that he should have been permitted to reopen the suppression hearing prior to the commencement of the trial, and that the trial court should have granted his motion for mistrial based on prosecutorial misconduct. We affirm.
The facts giving rise to the defendant's arrest are those upon which his conviction is based. On the night of June 14, 1975, Officer Sanders of the Aurora Police Department was conducting surveillance of 1065 Emporia Street for the purpose of executing an arrest warrant on a person named Martin. Sanders had been informed that Martin lived at that address, or frequented the house, and either drove or owned a red Volkswagen. Martin had been described to Sanders as being a six-foot-tall, 300-pound black male.
During the course of the surveillance, Sanders observed a red Volkswagen pull up in front of 1065 Emporia and saw two people get out of the car and enter the house. Because of the darkness, he could not identify either of these individuals. Approximately one hour later, Sanders saw an unidentified person get into the Volkswagen and drive away. Sanders did not see this individual leave the house at 1065 Emporia, and he could not tell whether the individual matched the description of Martin.
*297 As the Volkswagen pulled away, Sanders made a radio call asking that the vehicle be stopped so that the driver could be identified. Officer Garbett, patrolling nearby, spotted the Volkswagen, turned on his lights and began pursuit. Officer Garbett testified that as the Volkswagen slowed down the driver reached under the seat and threw something out the window. When the Volkswagen stopped, the driver, subsequently identified as Cornelius, was unable to produce a driver's license or vehicle registration. Cornelius was arrested when Officer Garbett discovered that the object thrown from the window was a plastic sack containing 25 rolled-up balloons. The substance in these balloons later tested positive for heroin.

I.
The defendant first contends that the trial court erred in holding that the stop of the Volkswagen was a reasonable investigatory stop and that the evidence derived therefrom could be admitted. He contends the stop was made for purposes of arrest and since probable cause to arrest was lacking, the heroin should have been suppressed. We disagree. The primary purpose of stopping the Volkswagen was to ascertain the identity of the driver.
Prior to retrieving the object which had been thrown from the car, Officer Garbett did not have probable cause to arrest the driver. However, law enforcement officers may lawfully detain a person without probable cause to arrest, if they have a legitimate purpose in doing so, if that purpose is reasonable, and if the character of the detention is reasonable when considered in light of the purpose. See People v. Casias, Colo., 563 P.2d 926 (1977); Stone v. People, 174 Colo. 504, 485 P.2d 495 (1971); People v. Davis, Colo.App., 565 P.2d 1347 (1977).
An investigatory detention is permissible for the purpose of questioning a suspect, who might otherwise escape, about his identity or behavior so that the status quo may be maintained while information is sought regarding possible wrongdoing. See People v. Severson, Colo.App., 561 P.2d 373 (1977). Whether the temporary detention is justified necessarily depends on the facts of each particular case. People v. Casias, supra.
Under the circumstances of this case, the trial court correctly ruled that this was a proper investigatory stop. Officer Garbett was authorized to stop the Volkswagen based on information known to Officer Sanders. People v. Nanes, 174 Colo. 294, 483 P.2d 958 (1971). The location of the Volkswagen and its description gave Officer Sanders, who possessed an arrest warrant for a person believed to be residing at the house, ample grounds to request that the Volkswagen be stopped for the limited purpose of ascertaining the identity of its driver. The defendant's encounter with the police turned into something more than a temporary detention because he threw a package out of the window. Once the officers ascertained that the package might contain heroin they had probable cause to arrest Cornelius; see Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); People v. Montoya, 185 Colo. 299, 524 P.2d 76 (1974); thus, the seizure was not unlawful and the heroin was admissible.

II.
The defendant next contends that the trial court erred in not allowing him to reopen the suppression hearing on the day of trial for the purpose of introducing what he argues was newly discovered evidence on the propriety of the investigatory stop. At the original suppression hearing, Officer Sanders testified that his superior, Sgt. Rodriguez, told him that Martin had a red Volkswagen. The defendant argues Rodriguez would testify, at a further hearing, that he did not tell Sanders that Martin had a red Volkswagen, but rather, that he had been seen in one a year earlier. Although subpoenaed, Sgt. Rodriguez, who was no longer working for the Aurora Police Department, did not appear at trial.
The defendant knew, as early as the preliminary hearing, several months prior to *298 the original suppression hearing, that Officer Sanders had received his information regarding the Volkswagen from Rodriguez. Rodriguez was present at the original suppression hearing and could have been called to testify. The record does not show that the defense made any effort to interview Rodriguez before the suppression hearing. Under such circumstances, what Sgt. Rodriguez would testify to, if he could be found, is not newly-discovered evidence since it could have been discovered with the exercise of reasonable diligence prior to the original suppression hearing. See People v. Scheidt, 187 Colo. 20, 528 P.2d 232 (1974); Isbell v. People, 158 Colo. 126, 405 P.2d 744 (1965).
Ordinarily, a trial court is not required to entertain a suppression motion at trial. See People v. Stevens, 183 Colo. 399, 517 P.2d 1336 (1973); Crim.P. 41(e). And we cannot say, as a matter of law, that the trial court here abused its discretion in refusing to reopen the suppression hearing on the morning of trial. See Morgan v. People, 166 Colo. 451, 444 P.2d 386 (1968).

III.
The defendant argues that the trial court should have granted his motion for a mistrial when the district attorney threatened a defense witness with a perjury prosecution in the presence of the jury. The record reflects that at one point during cross-examination the witness was reluctant to answer the district attorney's questions because she felt they involved her private affairs. Unsatisfied with the witness' answer, the district attorney asked the witness if she realized that she could be charged with perjury if she did not tell the truth. While questions of this type posed to an individual witness are not proper and should be avoided, the isolated reference in this case does not constitute reversible error. This is a far cry from the expression of the prosecutor's personal belief that a witness had committed perjury, which was condemned in People v. Wright, 182 Colo. 87, 511 P.2d 460 (1973). And, the single reference to perjury distinguishes this case from the extended duration of the confrontation between the district attorney and the witness disapproved in People v. Lowe, Colo.App., 565 P.2d 1352 (1977).
A motion for a mistrial is directed to the sound discretion of the trial court, and its ruling thereon will not be overturned absent a showing of abuse. People v. Langford, Colo., 550 P.2d 329 (1976); Moore v. People, 174 Colo. 286, 483 P.2d 1340 (1971). Here, there was no abuse of discretion in denying defendant's motion for a mistrial.

IV.
Asserting that an adequate chain of custody had not been established, the defendant also attacks the ruling of the trial court admitting into evidence 21 of the 25 balloons of heroin seized at the time of the defendant's arrest. The defendant argues that the People's failure to call Agent Torraco of the Colorado Bureau of Investigation, who had control of the evidence for more than five months, constituted a break in the chain of custody, rendering the evidence inadmissible. We disagree.
It is undisputed that the heroin seized on the night of the defendant's arrest was personally delivered to Torraco, who signed for it. The evidence remained under Torraco's control for approximately 5½ months until he personally returned it to the evidence custodian at the Aurora Police Department. By the time of trial, Torraco had resigned from the CBI, his whereabouts were unknown, and there was no testimony concerning what was done with the evidence while it was in his custody. After Torraco's resignation, the evidence was resubmitted to the CBI, where it was tested by Cordell Brown, who testified at trial that the substance in the balloons was heroin.
To establish a chain of custody, the prosecution produced three police officers who had initialed some of the seized balloons and who were present at the time of the defendant's arrest. Each of the officers identified a balloon which contained his initials. *299 At least one of the balloons had also been initialed by Cordell Brown, indicating that he had tested the contents. Each officer testified that the balloons were in the same condition at the time of trial as they were at the time he placed his initials on them, and Cordell Brown testified that when he did the testing there was no evidence that any of the 21 balloons had been tampered with.
The prosecution has the burden of establishing a chain of custody and this requires a showing that the evidence is in the same condition it was at the time it was obtained. People v. Atencio, 187 Colo. 226, 529 P.2d 636 (1974). It is not contended that there was any irregularity in the manner in which Torraco received and returned the evidence; nor was there any showing that the balloons admitted into evidence had been tampered with. The possibility that the evidence was tampered with while it was in Torraco's custody is pure speculation, and his absence did not make the evidence inadmissible as a matter of law. See People v. Atencio, Colo., 565 P.2d 921 (1977); People v. Sanchez, 184 Colo. 25, 518 P.2d 818 (1974).

V.
The defendant urges that the trial court erred in denying his challenge to the array and in failing to grant him a hearing on the jury selection procedures. The defendant did not file a motion accompanied by a sworn affidavit as required by § 13-71-113, C.R.S.1973. Moreover, the basis of the challenge was that the particular panel from which the defendant's jury was selected contained no black members, and this is not sufficient to establish a prima facie case that a segment of the population was systematically excluded. Cf. Montoya v. People, 141 Colo. 9, 345 P.2d 1062 (1959).

VI.
Finally, the defendant contends that he was entitled to a continuance because of the People's late endorsement of Cordell Brown, the CBI agent who analyzed the drugs. Since the defendant was notified long before trial that an agent of the CBI would testify and was notified a week prior to trial that Cordell Brown would be the agent who would testify, this contention is without merit. See People v. Gable, 184 Colo. 313, 520 P.2d 124 (1974).
Judgment affirmed.
PIERCE and RULAND, JJ., concur.