## No. 28328

## The People of the State of Colorado v. James Dean Hillyard

(589 P.2d 939)

Decided January 29, 1979.

John Anderson, District Attorney, Dennis E. Faulk, Deputy, for appellant.

Fredrickson, Johnson & McDermott, P.C., Tom N. Kiehnhoff, for appellee.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This is an interlocutory appeal by the People under C.A.R. 4.1 contesting a district court order suppressing the defendant's statements and items seized after his arrest. The defendant was charged with second degree burglary (section 18-4-203, C.R.S. 1973) and theft of less than $200 but more than $50 (section 18-4-401, C.R.S. 1973 (1976 Supp.)). We reverse.

The only testimony before the court was that of Officer Martin. He testified that the following events transpired approximately between the hours of 1:00 a.m. and 3:00 a.m. on May 3, 1978 in Canon City. Officer Martin saw the defendant and a companion walking and then pausing for about one minute to gaze into a closed and unlit drugstore. The officer had in mind that it was Blossom Festival weekend, that a carnival was in town, and that street crime was usually greater under those circumstances. The two began to walk on, but officer Martin stopped them and asked for their names, birthdates and some identification. After relaying their names to the Colorado Crime Information Center by means of his car radio, the officer learned that there was an outstanding U.S. Navy A.W.O.L. arrest warrant for the defendant. The defendant claimed he was a different person than the AWOL Navy man and asserted that he had identification at his truck near the carnival grounds. The officer told the defendant's companion that he was free to go, and then drove the defendant to his truck. There the defendant failed to produce any identification. The officer arrested the defendant and read him *Miranda* warnings, whereupon the defendant admitted he was AWOL.

On the way to the police station, the defendant began telling the officer about a burglary which his companion had committed earlier that evening. This information was not elicited by any questions or comments made by Officer Martin. In fact, he had no basis on which to prompt the defendant regarding the burglary since it had not yet been discovered.

After reminding the defendant of his rights, the officer asked him to guide them to the scene of the burglary. When they arrived the officer noted that, as the defendant had described, the back door of the Book Corral Store had been kicked in. The officer returned to the police car, again reminded the defendant of his rights and asked what had been taken from the store. The defendant stated that stereo equipment had been taken and placed in the truck at the carnival grounds. The officer informed the defendant that he could consent to a search of the truck or that the officer could obtain a search warrant. The defendant consented to the officer's search of the truck, and the officer there found the stereo equipment.

The defendant moved to suppress all statements he made to Officer Martin, as well as items seized from his person or from the truck. The motion was granted.

The People request a reversal of the district court's suppression of the stereo equipment, or, in the alternative, a remand of the case to the district

court for additional findings of fact and conclusions of law which the People claim are necessary to support the suppression order.

We agree with the People's contention that the court should have made additional findings and conclusions to support its implied conclusion that the matters suppressed were the fruits of an invalid stop. The court's order includes only those facts and findings supporting its ruling that the initial stop of the defendant and his companion was invalid.

We assume *arguendo* that the stop was invalid.

█ The parties have argued the issue as to whether the tincture of the taint of the invalid stop remained sufficiently colorable to justify the suppression. As stated above, the court made an implied conclusion as to this issue because an invalid stop does not *per se* require suppression of evidence seized thereafter. *People v. Bates,* 190 Colo. 291, 546 P.2d 491 (1976); *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In *Wong Sun,* the court said:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"

The cases just cited suggest that in the absence of a *per se* rule, each case must be decided on its facts taking into consideration such factors as the voluntariness of the defendant's communications, the degree of police misconduct and any relevant intervening circumstances.

█ The facts are undisputed. The officer stopped the defendant without a reasonable suspicion that he had committed, or was about to commit, any crime. That, however, was the extent of his misconduct. He did not arrest upon such general suspicions. Rather, he acted because of the Navy's outstanding arrest warrant. The fact that the officer told the defendant's companion he was free to go indicates that the officer did not arrest the defendant simply in order to extend his investigation. Once he knew of the warrant, the officer would have been derelict in his duty not to have arrested the defendant. Moreover, before placing the defendant under arrest, Officer Martin drove him to his truck so he could procure identification. Only when the defendant failed to produce identification was an arrest made on the basis of the probable cause supplied by the report from the Colorado Crime Information Center.

The officer was scrupulous in informing the defendant of his rights, even repeating *Miranda* warnings before he asked the defendant to guide him to the scene of the alleged burglary.

Finally, it appears the defendant volunteered information of the burglary. It was a crime not yet reported or discovered. There is no claim that the officer in any way prompted the defendant regarding any criminal activity. Under the circumstances, there was no motive for such questioning. He arrested the defendant to turn him over to the Navy, not to investigate any crimes in his own jurisdiction.

We conclude that the intrusiveness of the unauthorized stop was minimal, that there was an intervening arrest upon valid grounds not fatally connected with the stop, and that the defendant volunteered information regarding a crime which had no relation either to his activity at the time of the stop or to his AWOL status.

We hold that in these circumstances the connection of the evidence and the illegal stop was so attenuated as to dissipate the taint. Consequently, we reverse the ruling.

MR. JUSTICE LEE, MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN dissent.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent. A defendant's extrajudicial statements, or the fruits thereof, cannot be admitted into evidence against him unless the prosecution can establish the voluntariness of those statements beyond a reasonable doubt. *People v. Moreno,* 176 Colo. 488, 491 P.2d 575 (1971); *People v. Kelley,* 172 Colo. 39, 470 P.2d 32 (1970). The record in this case cannot support such a determination. The trial court correctly suppressed any evidence of the defendant's statements and the resulting search of the trunk, and its ruling should be affirmed.

## I.

### *The Unlawful Detention*

The arresting officer observed the defendant and his companion standing for approximately one minute before the window of a drugstore. They did not touch the window or door of the store. They did not appear to be intoxicated. They did not repeatedly return to the window in a manner indicating criminal intent. *Cf. Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The defendant and his companion were simply standing on the sidewalk, as they had every right to do. Nothing in their conduct provided the slightest justification for the officer's actions in summoning them into his presence and demanding that they identify themselves. None of the circumstances surrounding the detention — the late hour, the Blossom Festival, a burglary at the jewelry store at some unknown prior time — could give rise to any constitutionally-sufficient reason for the officer's unlawful invasion into the defendant's privacy.

In every prior case in which this court has found the detention of a person without probable cause to arrest to be constitutionally permissible, that detention resulted from some articulable and arguably justifiable suspicion on the part of the peace officer. *See People v. Casias,* 193 Colo. 66, 563 P.2d 926 (1977); *People v. Taylor,* 190 Colo. 144, 544 P.2d 392 (1976); *People v. Mathis,* 189 Colo. 534, 542 P.2d 1296 (1975); *People v. Mullins,* 188 Colo. 23, 532 P.2d 733 (1975); *People v. Cruz,* 186 Colo. 295, 526 P.2d 1315 (1974); *People v. Montoya,* 185 Colo. 299, 524 P.2d 76 (1974); *People v. Burley,* 185 Colo. 224, 523 P.2d 981 (1974); *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971); *see also Terry v. Ohio, supra.*

The officer's detention of the defendant was not, as the majority suggests, a minimal and quickly dissipated invasion of defendant's privacy.

## II.

### The Defendant's Statements and the Physical Evidence

Although the majority concurs with the trial court's ruling that the officer erred in stopping the defendant, it concludes that the taint of that unlawful intrusion had dissipated by the time the defendant made his inculpatory statements. A brief examination of the events following defendant's detention will rebut that conclusion.

When the officer stopped defendant, he asked for the defendant's name. The officer then called on his car radio to discover whether a warrant had been issued for anyone with that name. During that check, the defendant was not free to leave. When the officer learned that a person with that name was wanted by the military, he drove the defendant, in a police car, to a truck, so that the defendant could produce his identification.

When the defendant was unable to locate his identification, he was handcuffed, arrested, and read his *Miranda* rights. The pair then drove to the police station. As they reached the police parking lot, the defendant told the officer that his companion had burglarized a book store, although he was unsure where the store was. The defendant was then advised of his *Miranda* rights again, and the two left the parking lot in the police car to find the store. While the officer and the defendant looked for the store, defendant explained how his companion had burglarized it. Not until after the store was located, and in response to the officer's repeated questioning, did the defendant finally admit that he too had entered the store. Fifteen or twenty minutes later, the defendant told the officer where the items stolen from the store had been taken. There is no evidence in the record to show what transpired during that period. The defendant then took the officer to the truck where the stolen items had been secreted. After the officer secured the stolen goods, he returned the defendant to the police station, where the defendant refused to sign a written statement and asked for a lawyer.

"This case lies at the crossroads of the Fourth and Fifth Amendments." *Brown v. Illinois,* 422 U.S. 590, 591, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The defendant's inculpatory statements, and the evidence which was seized, were the product of an intrusion which violated the Fourth Amendment. However, the United States Supreme Court has never held that a *per se* "but for" rule is to be applied in such cases: not every Fourth Amendment violation results in the suppression of resulting incriminating statements. Evidence which has been obtained independent of the violation is still admissible against the defendant. *Silverthorne v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Statements produced by an unlawful invasion of the defendant's privacy may also be admitted, if the statements were "sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

However, the giving of *Miranda* warnings — the only circumstance intervening between the unlawful detention and the confession in this case — does nothing to purge the taint or constitute a means for the defendant to assert his free will. Although *Miranda* warnings may so alleviate the tensions of custody that statements made after those warnings may be admitted into evidence without violating the Fifth Amendment, if they are otherwise voluntary, those same warnings are not alone sufficient to purge the taint of a violation of the Fourth Amendment.

"Although, almost 90 years ago, the Court observed that the Fifth ,Amendment is in 'intimate relation' with the Fourth," *Boyd v. United States,* 116 U.S. 616, 633 (1886), the *Miranda* warnings thus far have not been regarded as a means either of remedying or deterring violations of Fourth Amendment rights. Frequently, as here, rights under the two Amendments may appear to coalesce since 'the "unreasonable searches and seizures" condemned in the Fourth Amendment are almost always made for the purpose of compelling a man to give evidence against himself, which in criminal cases is condemned in the Fifth Amendment.' *Ibid.* . . . The exclusionary rule, however, when utilized to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth. It is directed at all unlawful searches and seizures, and not merely those that happen to produce incriminating material or testimony as fruits. In short, exclusion of a confession made without *Miranda* warnings might be regarded as necessary to effectuate the Fifth Amendment, but it would not be sufficient fully to protect the Fourth. *Miranda* warnings, and the exclusion of a confession made without them, do not alone sufficiently deter a Fourth Amendment violation.

"Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the casual chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the

statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' 371 U.S. at 486. *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment.

"If *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. See *Davis v. Mississippi,* 394 U.S. 721, 726-727 (1969). Arrests made without warrant or without probable cause, for questioning or 'investigation,' would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving *Miranda* warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a 'cure-all,' and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to 'a form of words.'" *Brown v. Illinois, supra,* at 601-603 (footnote omitted).

In determining whether the defendant's statements in this case were the product of his free will, we must look not only to the presence or absence of *Miranda* warnings, but to three other factors set forth in *Brown v. Illinois, supra*:

"The temporal proximity of the arrest and the confession, the presence of intervening circumstances . . . and, particularly, the purpose and flagrancy of the official misconduct are all relevant." *Id.* at 603-604 (footnotes omitted).

In this case, less than one hour elapsed between the arrest and the inculpatory statements. The only intervening circumstances were the arrest and handcuffing of the defendant, the officer's continuing presence and questioning during that hour, and the giving of *Miranda* warnings. The trial court implicitly found that these circumstances did not serve to purge the taint of the original detention. Thus, neither the lapse of time nor the intervening circumstances demonstrate that the defendant had been given an opportunity to recover his free will before he made the incriminating statements. *See Wong Sun v. United States, supra.*

Finally, we must look for the "purpose and flagrancy" of the officer's conduct. His purpose was solely to satisfy his curiosity. He had absolutely no other reason to detain the defendant.

Exclusion of this evidence is not an unwarranted sanction for this Fourth Amendment violation. The basic purpose of the exclusionary rule is to eliminate any reward to the state when it engages in illegal conduct. The officer's actions in this case should require the clearest evidence that the taint of that illegal conduct has been attenuated.

"I would require the clearest indication of attenuation in cases in which official conduct was flagrantly abusive of Fourth Amendment rights. If, for example, the factors relied on by the police in determining to make the

arrest were so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or if the evidence clearly suggested that the arrest was effectuated as a pretext for collateral objectives . . . or the physical circumstances of the arrest, unnecessarily intrusive on personal privacy, I would consider the equalizing potential of *Miranda* warnings rarely sufficient to dissipate the taint. In such cases the deterrent value of the exclusionary rule is most likely to be effective, and the corresponding mandate to preserve judicial integrity, see *United States v. Peltier, ante,* p. 531; *Michigan v. Tucker,* 417 U.S. 433, 450 n. 25 (1974), most clearly demands that the fruits of official misconduct be denied. *I thus would require some demonstrably effective break in the chain of events leading from the illegal arrest to the statement, such as actual consultation with counsel or the accused's presentation before a magistrate for a determination of probable cause, before the taint can be deemed removed,* see *Gerstein v. Pugh,* 420 U.S. 103 (1975); *cf. Johnson v. Louisiana,* 406 U.S. 356, 365 (1972); *Parker v. North Carolina,* 397 U.S. 790, 796 (1970)." *Brown v. Illinois, supra* at 610-611 (Powell, J. concurring in part). (Emphasis added.)

The record in this case is totally inadequate to support a finding beyond a reasonable doubt that the defendant's inculpatory statements were voluntary. Moreover, when the facts of this case are analyzed in the manner commanded by *Brown v. Illinois, supra,* it is clear that the purposes of the exclusionary rule, and the enforcement of this court's dictates as to the privacy rights of citizens, would be furthered by the exclusion of the defendant's statements.

Accordingly, I would affirm the decision of the trial court.

MR. JUSTICE LEE and MR. JUSTICE CARRIGAN have authorized me to announce that they join me in this dissent.